UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JEFFREY BILYEU, et al., | ) | |
|---|---|---|
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No. 3:21-cv-352 |
| v. | ) | |
| | ) | Judge Atchley |
| | ) | Magistrate Judge Guyton |
| UT-BATTELLE, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiffs' Motion for Preliminary Injunction [Doc. 7]. A hearing on Plaintiffs' motion for an Emergency Temporary Restraining Order [Doc. 7] was held on October 15, 2021. This Court partially granted that request. [Doc. 24]. The Court scheduled a preliminary injunction hearing for October 26, 2021. [Doc. 30]. Additional briefing for the preliminary injunction hearing was provided from both parties [Docs. 36, 39], and this Court heard oral argument and testimony on October 26 and 27, 2021. After careful review of the record and consideration of oral testimony, for the reasons explained herein, Plaintiffs' Motion for Preliminary Injunction is **DENIED.**

**I.      Background and Facts**

Plaintiffs Jeffrey Bilyeu, Jessica Bilyeu, Stephanie Bruffey, Mark Cofer, Gregory Sheets, and William Webb are all employees of Defendant UT-Battelle. [Doc. 1 at ¶¶ 4-9]. Defendant UT-Battelle, LLC administers, manages, and operates the Oak Ridge National Laboratory ("ORNL"). [*Id.* at ¶ 10]. Plaintiffs brought this case on behalf of themselves and others similarly situated, and they pled the requirements for class certification in the complaint. [*Id.* at ¶¶ 101-09].

1

The action stems from UT-Battelle's mandatory COVID-19 vaccination policy for employees. Plaintiffs allege Title VII of the Civil Rights Act of 1964 and Americans with Disabilities Act ("ADA") violations. The Title VII claims are for failure to accommodate and retaliation. [*Id.* at 19-22]. Plaintiffs claim that UT-Battelle "refused to engage in a good faith interactive process" regarding the accommodation and that indefinite unpaid leave is *not* a "reasonable" accommodation. [*Id.* at ¶¶ 113-14]. Plaintiffs also argue that UT-Battelle retaliated against their sincere religious beliefs by threatening "years" of unpaid leave. [*Id.* at ¶ 122]. As far as the ADA claims are concerned, Plaintiffs also claim failure to accommodate and retaliation. [*Id.* at 22-24]. These claims relate to UT-Battelle's alleged failure to provide reasonable medical accommodations to those who requested them and an alleged failure to adequately engage in the interactive process. Plaintiffs also argue that the threat of indefinite unpaid leave is retaliation for some of the Plaintiffs' legitimate medical conditions or concerns. [*Id.* at ¶¶ 129, 130, 137].

When COVID-19 started to spread in the spring of 2020, UT-Battelle implemented certain mitigation procedures for its workforce, including the requirement that some employers work from home, while those on site were required to wear masks and practice social distancing, and some employees received weekly COVID-19 tests. [*Id.* at ¶ 15]. During a mid-year performance review in July 2020, UT-Battelle explained that more employees are "working from home forever," and that the company would be implementing "policies and procedures for managing a distributed workforce." [Ex. 30 at 16.]. As the pandemic wore on, the number of COVID-19 cases on UT-Battelle's campus decreased from the spring to early summer of 2021, and the company began to prepare for a return to "normal." [Doc. 36-10 at 1]. However, with the emergence of the Delta Variant, COVID-19 cases on Defendant's campus and within the community began to increase in late June 2021. [*Id.*].

On August 26, 2021, ORNL Director Thomas Zacharia announced through email that it will require "all employees to receive the COVID-19 vaccine." [Doc. 36-10 at 1]. The company held several town halls on the mandate with Human Resources and Medical leadership [Doc. 36-3 at ¶ 5] and released a "Vaccine Requirement" fact sheet on September 13, 2021. [Doc. 1 at ¶¶ 20-21]. The fact sheet outlined that those not approved for an accommodation would be vaccinated onsite—or must submit verification of off-site vaccination—by October 15, 2021. [*Id.* at ¶ 21].

On September 16, 2021, Director Zacharia sent a staff-wide email explaining that accommodations, including face coverings and regular testing, might not provide adequate protection for the staff. [Doc. 36-10 at 2]. UT-Battelle held interviews with 24 employees seeking Title VII accommodations but cancelled all remaining interviews. [Doc. 36-11 at 1]. In the afternoon of September 22, 2021, the Human Resources Director Jody Zahn sent an email to those who requested Title VII accommodations, stating that the only accommodation that did not create undue hardship for Defendant would be unpaid leave [*Id.*]. UT-Battelle's communications on their policy make it clear that this accommodation would be reevaluated in 60 days. [*Id.*].

Each named plaintiff requested a religious accommodation through Title VII to the company's vaccine mandate, and each request was approved by the company. [Doc. 1 at ¶¶ 51, 58, 65, 73, 82, 95]. Plaintiff Gregory Sheets also requested a medical accommodation, but it was denied after he refused to release medical information to the company. [*Id.* at ¶¶ 84, 87-88]. Testimony at the preliminary injunction hearing clarified Sheets has since allowed UT-Battelle to access his medical information, and the company requested he see an allergist or immunologist for an opinion. Plaintiff Mark Cofer also requested a medical exemption, but his request was denied because UT-Battelle claims the condition is not a contraindication to vaccination per the Center for Disease Control and Prevention.

3

Plaintiffs filed an emergency motion for Temporary Restraining Order and for Preliminary Injunction [Doc. 7]. After hearing oral argument on Plaintiffs' Motion for Temporary Restraining Order ("TRO"), this Court issued a TRO preventing UT-Battelle from placing those granted a religious or medical accommodation on unpaid leave. [Doc. 24]. Notably, the Court found that while "Plaintiffs adequately expressed they will suffer irreparable harm . . . the Court also notes that further factual findings might alter this determination." [*Id.* at 1-2]. Particularly, there was ambiguity as to whether Plaintiffs would lose medical insurance and security clearances. [*Id.*]. Given this lack of clarity and the timeline facing the Court, it decided in equity to pause matters until it was able to better determine the relevant facts and issues.

A preliminary injunction hearing was held on October 26 and 27, 2021. [Docs. 48-50]. During this hearing, both parties made oral arguments and presented supporting witnesses. Additionally, the parties submitted supplemental briefings, which the Court has considered. [Docs. 36, 39].

### II. Preliminary Injunction Standard

Generally, a preliminary injunction is issued to "protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2947 (3d ed.). When determining whether to issue a preliminary injunction, courts look to a four-pronged standard: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)); *see Winter v. Natural Resources Defense*

4

*Council, Inc.*, 129 S. Ct. 365, 374 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

Preliminary injunctions are "extraordinary and drastic remed[ies]" and are "never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 690-91 (2008). Further, the four factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coal. For Homeless and Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). The burden is on the moving party to show they are entitled to an injunction, not on the party defending against it. *See* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cty., etc.*, 415 U.S. 423, 442-43 (1974).

"[A] district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are determinative of the issue." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003); *see also D.T., et al. v. Sumner Cty. Sch., et. al.*, 942 F.3d 324, 327 (6th Cir. 2019) (explaining that the district court did not err in stopping its inquiry after finding no irreparable injury, as irreparable harm is required, and its absence is thus dispositive of the matter). While Plaintiffs' likelihood of success on the merits is an important factor, because the underlying claims at issue here are not constitutional, this factor is not determinative. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) ("When a party seeks a preliminary injunction *on the basis of a potential constitutional violation*, 'the likelihood of success on the merits will often be the determinative factor.'")

5

(emphasis added). On the other hand, the existence of irreparable harm is "indispensable." *Sumner Cty. Sch., et al.*, 942 F.3d at 327. Even in the face of a particularly strong showing for the other three factors, irreparable harm is still required. *See id.* ("[E]ven the strongest showing on the other three factors cannot 'eliminated the irreparable harm requirement.'") (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Thus, without the existence of irreparable harm, the equitable relief of a preliminary injunction is not appropriate.

### III. <u>Irreparable Harm</u>

The Sixth Circuit describes the existence of irreparable harm as "indispensable" in determining whether to issue preliminary relief. *Sumner Cty. Sch., et al.*, 942 F.3d at 327. "If the plaintiff isn't facing an imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id*. In other words, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' " *Id*. at 326-27 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The moving party must also show the irreparable harm is likely. *Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008) (rejecting the Ninth Circuit's holding that irreparable harm must be a "possibility"). To be "likely", the harm must be "certain and immediate," not "speculative or theoretical." *Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020); *see Saidak v. Schmidt*, 501 F. Supp.3d 577, 598 (E.D. Tenn. 2020) ("To constitute irreparable harm, an injury must be certain, great, and actual."). Thus, under Sixth Circuit precedent, Plaintiffs must demonstrate certain and immediate irreparable harm for the grant of preliminary injunction to be appropriate. And "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against [the] claim." *Johnson v. City of Memphis*, 444 Fed. App'x

6

856, 2011 WL 5105806, *4 (6th Cir. 2011) (citing *Brake Parts, Inc. v. Lewis*, 443 Fed. App'x 27, 2011 WL 3510225, *5 (6th Cir. 2011)).

Plaintiffs proffer three distinct theories of irreparable harm. An exploration of each is below.

### A. "Impossible Choice" Theory of Irreparable Harm

Plaintiffs' first argument for irreparable harm claims that being forced to choose between their religious convictions and gainful employment is manifestly irreparable. [Doc. 39 at 17]. They argue there is no "undoing" the shot once an individual receives it and, as a result, there is no undoing one's decision to go against their own beliefs. [*Id.*]. Plaintiffs believe UT-Battelle is coercing them into acting against their sincere religious beliefs.

However, Plaintiffs conflate the alleged irreparable harm arising from UT-Battelle's challenged accommodation with the personal difficulty of choosing whether to decline the vaccine requirement. Plaintiffs are not being forced to take the vaccine, thus depriving them of the right to exercise their religious beliefs, and defendant has not terminated their positions. In fact, Defendant has expressed a desire and intention to bring Plaintiffs back to work—even if their position has been filled. [*See* Doc. 36-12 at 6-7]. From the initial email detailing the Title VII requesters' approved accommodation, Defendant's position has always been that the accommodation of unpaid leave will be reevaluated in consideration of COVID-19 community transmission statistics *60 days from the date of leave*. [Doc. 36-11 at 1].

Plaintiffs cite the Supreme Court of the United States in arguing that the loss of First Amendment rights is irreparable. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (explaining "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). But Plaintiffs have not lost their freedom to

7

exercise their First Amendment rights, nor have they asserted a First Amendment claim. Rather, Plaintiffs did in fact exercise their religious rights by requesting a religious accommodation. While Plaintiffs may not agree with the accommodation that they received, all those who espoused a remotely religious rationale were given an accommodation. [Doc. 20-1 at ¶ 22]. Certainly, there is a serious argument that UT-Battelle's blanket policy was ill-advised and underthought, but it did not deprive Plaintiffs of their right to refuse the vaccination.

Title VII exists to remedy precisely this type of purported wrongdoing by employers, even when the notion of religious freedom is involved. But "the type of activity protected by the First Amendment is different than the type of activity protected by Title VII". *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014). And while Plaintiffs tie these proceedings to larger notions of constitutional freedom, they filed employment discrimination claims. Though the Sixth Circuit has found a presumption of harm when a cognizable constitutional claim is at issue, *see Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)), no such constitutional claims are asserted here.

> When faced with similar situations, other courts within this circuit have explained:
>
> No Plaintiff is being imprisoned and vaccinated against his or her will . . . . Rather, these Plaintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice. Even if they believe the condition or the consequences are wrong, the law affords them an avenue of recourse—and that avenue is not injunctive relief on this record.

*Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-105, 2021 WL 4398027, at *7 (E.D. Ky. Sept. 24, 2021); *see Harsman v. Cincinnati Children's Hospital Medical Center*, No. 1:21-cv-597, 2021 WL 4504245, at *4 (S.D. Ohio Sept. 30, 2021). Because Plaintiffs in fact requested a religious

8

Case 3:21-cv-00352-CEA-HBG   Document 53   Filed 10/29/21   Page 8 of 19   PageID #: 1039

accommodation and received one, Plaintiffs have failed to show the decision to exercise their beliefs will cause irreparable harm.

### B. "Chilling Effect" Stemming from UT-Battelle's Actions

Plaintiffs also claim that UT-Battelle's actions will create a "chilling effect," essentially dissuading others from exercising their rights under Title VII or the ADA. [Doc. 39 at 18-19]. Plaintiffs argue UT-Battelle is sending a message that if any employees assert their statutory rights under Title VII or the ADA, they will lose their job or be deprived of other work experiences while the Equal Employment Opportunity Commission ("EEOC") investigates the claim. [*Id.* at 18].

This argument is unpersuasive, as it remains unclear whose choices will be chilled by such actions. UT-Battelle set a deadline of October 15, 2021 for employees to be vaccinated. [Doc. 36-10 at 1]. The Court has seen no evidence that unvaccinated employees who have not yet requested some sort of accommodation are still working for UT-Battelle. A chilling effect must affect someone, and there is no indication of who remains to be impacted. Furthermore, Defendant represented in court that its employees have continued to file EEOC charges—even after the accommodation of unpaid leave was announced.

In short, this Court has seen no evidence that a "chilling effect" is created by the specter of some period of unpaid leave, either in the context of Title VII and ADA requests or the filing of EEOC charges. And it simply cannot find irreparable harm when the potential harm is so speculative and uncertain. *See Memphis A. Philip Randolph Institute*, 978 F.3d at 391.

### C. Irreparable Injury Related to Loss of Income, Benefits, and Career-Related Matters

Finally, Plaintiffs argue they will suffer irreparable harm from the loss of income and a period of unpaid leave, including benefits, job-specific certifications, and decreased career opportunities. When partially granting a TRO on this matter, the Court found that Plaintiffs

9

adequately expressed the possibility of irreparable harm in the absence of temporary injunctive relief. [Doc. 24]. The Court explained that "Plaintiffs assert they will suffer irreparable harm due to the possible loss of employment benefits, loss of security clearances associated with their employment, and inability to pay for housing and education costs." [*Id.*]. Still, the Court noted "further factual findings might alter this determination." [*Id.*]. At the time, it was unclear as to whether medical insurance and security clearances would be maintained during the period of unpaid leave. [*Id.* at n.1]. On the more fully developed record, the Court finds that these employment-related harms are not irreparable, either because Plaintiffs have a remedy at law or because they are too speculative.

First, to the extent Plaintiffs contend they will suffer irreparable harm due to the loss of employment, Sixth Circuit law is clear that, standing alone, loss of employment is insufficient to establish irreparable harm. *See Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982) (absent a showing that an employer will be unable to provide backpay or reinstatement, "we hold that loss of employment…is not irreparable harm and will not support a claim by the union for injunctive relief"). This is because loss of employment "is fully compensable by monetary relief and is, therefore, not irreparable." *Hayes v. City of Memphis*, 73 Fed. App'x 140, 141 (6th Cir. 2003). Such remedies are the quintessential relief available to a successful plaintiff under Title VII. Of course, Plaintiffs do not allege they have been terminated, but even if they did, this allegation would not, without more, be sufficient to demonstrate irreparable harm under established Sixth Circuit precedent.

The law is equally well-settled that a temporary loss of income generally does not constitute irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1973) (finding that "the

10

temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 579 (6th Cir. 2002) ("The fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay."); *Aluminum Workers Int'l Union,* 696 F.2d at 444 (holding that no irreparable harm resulted from temporary unemployment while employees awaited arbitration). While Plaintiffs' note that "a month without a paycheck" is a "serious hardship," it is not irreparable—at least in the eyes of the law.[1]

Interwoven into Plaintiffs' suggested harms is the likelihood that the loss of income will result in other manifestations of irreparable harm. Plaintiffs assert, for example, that a loss of income could potentially result in an inability to pay for: a child's education [Doc. 7-5 at ¶ 28; Doc. 7-6 at ¶ 28], a child's special diet [Doc. 7-1 at ¶ 19], or a family member's medicine [Doc. 7-2 at ¶ 26]. The Court is not insensitive to the reality that for many, if not most, people, a temporary loss of employment is a serious hardship that can cascade into a variety of difficulties for the employee, their families, and dependents. Nevertheless, regardless of the Court's assessment of the financial hardship presented by a loss of income, the law is clear that such injuries are remediable. Despite the novel factual circumstances, this is an employment dispute and the hardships occasioned by a loss of income are common to Title VII and ADA employment disputes. The Court also notes Plaintiffs are not barred from seeking and obtaining temporary employment during the period of unpaid leave, which could offset the financial implications of the

---

[1] Plaintiffs cite *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006) to argue that an unpaid leave of possibly sixty days is irreparable. However, while the Supreme Court noted that a 37-day period of unpaid leave can constitute "serious" hardship for some, the Court did not comment on whether such hardship is irreparable. The issue in *Burlington Northern* was not whether the period of unpaid leave constituted irreparable harm, but whether it constituted an adverse employment action in the context of a Title VII retaliation claim.

challenged conduct. [Doc. 36-12 at 5]. The possibility of mitigating these harms also underscores that they remain speculative.

Plaintiffs also claim related but distinct harms stemming from loss of income or employment. Again, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Plaintiffs refer to several instances in which the Sixth Circuit—or courts within the Sixth Circuit—have found potential medical problems that result from the loss of insurance or ability to pay as "irreparable." However, as explained below, these cases largely concern the loss of insurance and harms that were imminent. Though Plaintiffs' concerns are not taken lightly, the harms associated with the particular medical claims presented are again too speculative.

Plaintiff's cited case law demonstrates that the possibility of losing health insurance or being unable to afford medical care is too speculative here. Plaintiffs cite *International Resources, Inc. v. New York Life Insurance Co.* as a case that demonstrates loss of insurance can be an irreparable harm. 950 F.2d 294 (6th Cir. 1991). There, the district court issued a preliminary injunction compelling the continuation of medical insurance. *Id.* at 296. The Sixth Circuit did not disturb the district court's finding, partially because loss of health coverage would adversely affect the maintenance of plaintiff's health and such a loss could cause irreversible physical harm to plaintiff. *Id.* at 302.

This case can be distinguished because of the imminence of the harm. In *International Resources*, plaintiff was facing termination of health coverage, and the court noted plaintiff "was having difficulty attracting medical care." *Id.* However, in this case, the record is clear that the loss of health insurance remains only a possibility. Plaintiffs will not face this possibility for two

12

months—if they face it at all.[2] And Plaintiffs have offered no evidence or suggestion that they will be unable to obtain health insurance if they do in fact lose their current coverage. It is inappropriate for this Court to speculate as to what decision UT-Battelle might make regarding the accommodation at some point in the future or assume that Plaintiffs will have no alternative insurance options.

The decision in *Golden v. Kelsey-Hayes Co.* is similarly distinguishable. 845 F. Supp. 410 (E.D. Ky. 1994) There, the plaintiffs were retirees and surviving spouses who challenged a modification to their existing health benefits. The court did find that reductions in their insurance coverage constituted irreparable harm, but significant weight was placed on the unique vulnerability of retirees. *See id.* at 415-16. These individuals were not employees, but rather dependent on coverage from some form of previous employment. *See id.* at 415. Again, while the Court is sympathetic to Plaintiffs' position, the possibility of losing health insurance while individuals are still in the work force—be it through termination, resignation, or changing jobs—is an unfortunate reality many workers are faced with. Further, the testimony in court establishes that Plaintiffs' existing health insurance will last at least two months. Despite Plaintiffs' belief that the period of unpaid leave will extend through the 60-day period of health coverage, again, a preliminary injunction requires a more substantial showing than a mere possibility. The Court simply cannot predict or assume what determination UT-Battelle will ultimately reach when accommodations are reevaluated.

---

[2] During oral testimony, Plaintiffs offered a description of the health insurance policy during periods of leave. [Ex. 42]. Given the wording of this document, there was confusion as to whether Plaintiffs' health insurance would extend through two months or merely one month. Specifically, the document explains that "[a]ctive employee premiums continue for the month the leave begins plus one additional month. Full-cost premiums begin the third month and continue for the duration of the leave or until participation is cancelled." [*Id.* at 1]. UT-Battelle declared in court that the period of unpaid leave would not begin until November 1, 2021 rather than October 30, 2021. Thus, Plaintiffs' health benefits will be undisturbed through December. Even without this clarification, given UT-Battelle's proclamation that the accommodation of unpaid leave will be reevaluated in no longer than 60 days, the harm would still be speculative, though it would pose a closer question.

Plaintiffs also assert harms such as possible foreclosure and loss of homes, possible lost educational opportunities, and possible loss of employment opportunities. However, "[t]hreats to Plaintiffs' careers, reputations, and the risk of bankruptcy or foreclosure are quintessentially compensable injuries. They are not irreparable." *Harsman v. Cincinnati Children's Hospital Medical Ctr.*, No. 1:21-cv-597, 2021 WL 4504245, at *4 (S.D. Ohio Sept. 30, 2021) (internal quotation marks omitted).

Plaintiffs state, for instance, that in the absence of steady income some will not be able to complete construction of new homes. [Doc. 7-1 at ¶ 20; Doc. 7-5 at ¶ 26]. Another plaintiff explains he just refinanced his home and "within a couple of months of being placed on unpaid leave" he will be unable to pay his mortgage. [Doc. 7-6 at ¶ 27]. But "'the mere *future* threat of foreclosure and eviction fails to satisfy [plaintiffs'] burden that he will suffer irreparable harm' because there is no threat of *imminent* harm." *Coulthard v. Trott & Trott, P.C.*, No. 12-13601, 2013 WL 12116368, at *4 (E.D. Mich. March 21, 2013) (citing *Turner v. Lerner, Sampson & Rothfuss*, 2011 WL 1357451, at *4 (N.D. Ohio Apr. 11, 2011). "Moreover, even the initiation of foreclosure does not constitute sufficient irreparable harm to warrant the grant of a preliminary injunction" because, depending on state law, the plaintiff will have time to redeem the mortgage after the foreclosure sale. *Id.* In Tennessee, a debtor is generally entitled to some period of redemption. Tenn. Code Ann. §§ 66-8-101, 66-8-102.

In arguing that the loss of career opportunities constitutes irreparable harm, Plaintiffs cited several cases during their oral argument that did not appear in prior briefing. Again, these cases can be distinguished from the facts at hand. *Johnson v. City of Memphis,* 444 Fed. App'x 856 at 1, concerned the Memphis Police Department's promotional process and the lack of promotion and further career opportunities for plaintiffs. *Howe v. City of Akron* found that "promotion delays

14

constitute irreparable injury." 723 F.3d 651, 662 (6th Cir. 2013). Both cases largely focus on the opportunities for career advancement and promotional opportunities that were wrongfully withheld. Here, the record indicates that Plaintiff Webb was initially concerned that he might not receive a promotion for which he is eligible. [Doc. 7-2 at ¶ 18]. However, testimony at the preliminary injunction hearing established that Webb has since been officially offered that very promotion. The only other mention of promotions in Plaintiffs' filings is from Plaintiff Sheets, who states "[a] Ph.D. is critical for promotion within the lab." [Doc. 7-3 at ¶ 23]. However, he is not scheduled to receive this degree until December 2022. [*Id.*]. The possibility of not completing his degree in time, and a resulting delay or inability to pursue promotional opportunities, is too speculative to constitute irreparable harm.

Similarly, Plaintiffs allege being placed on unpaid leave will cause them to lose professional experience during that time period, but this contention was not substantiated by the evidence. This Court has acknowledged that such a loss could constitute irreparable harm, *see Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-CV-145, 2019 WL 2291894, at *14 (E.D. Tenn. May 17, 2019), but as in *Manlove*, Plaintiffs have not shown that they will lose specific skills. And again, the Plaintiffs have not been terminated. Next, Plaintiffs argue that the possibility of losing out on educational attainment is irreparable harm. The record indicates that Plaintiff Sheets has another year to complete his program. [Doc. 7-3 at ¶ 23]. It is speculative to claim that he will be unable to complete his program because of this period of unpaid leave, particularly given the consistently stated reevaluation that UT-Battelle will conduct. Plaintiff Bruffey's predicament is different, however. She faces a closer deadline of spring 2022, which she clarified as December 2021 during oral testimony. However, she also testified that there is a process in which the program offers exceptions to this timeline. [Doc. 7-5 at ¶ 22]. She also stated in her affidavit and during

15

oral testimony that she has not yet requested an extension but understands that she would be able to receive an extension if she can lay out a path towards graduation. [Doc. 7-5 at 22]. There appears to be such a path, and she has not exhausted her avenues of fixing this potential harm outside the extreme relief of judicial injunction. Finally, the concerns of Plaintiffs Bilyeu and Webb about finishing their master's degrees are likewise speculative and linked to the overall harm of lost income. [Doc. 7-2 at ¶ 19; Doc. 7-4 at ¶ 21]. If these concerns ultimately come to fruition, the harm can be remedied through damages.

Plaintiffs also state that they will face irreparable harm if their security clearances are revoked, namely through a negative impact on future employment possibilities. [Doc. 39 at 20]. But the record shows that Plaintiffs with security clearances will retain them for 90 days. [Doc. 20-1 at ¶ 30]. At this point, no Plaintiff is in danger of losing his or her security clearance, and the possibility that this might occur in 90 days is speculative. Again, it is inappropriate for this Court to prejudge the decision UT-Battelle may or may not make after reevaluating its accommodation policy.

Perhaps, as Plaintiffs claim, "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson v. Murray* 415 U.S. at 92 n.68. But as personally significant as these harms are, Plaintiffs' situation is not fundamentally different than that of most aggrieved employees, who, like Plaintiffs, commonly have housing and educational expenses, career ambitions, families, dependents, and medical necessities. That these harms are remediable by Title VII does not make them less serious, however, it does mean that there is an adequate remedy at law. *See Beckerich*, 2021 WL 4398027 at *6 ("In fact, wrongful termination claims exist for that very reason—whether brought under the ADA, Title VII, or some

16

other state or federal law, a wrongfully terminated plaintiff can receive monetary damages to compensate their loss of employment.").

The Court acknowledges the economic reality faced by these Plaintiffs' is no small thing. But, like other courts in the Sixth Circuit faced with similar issues, the Court finds that Plaintiffs have not established irreparable harm based on the mere possibility of losing income, health insurance, or educational or professional opportunities.[3] Based on the evidence presented, these harms are, at least at present, too speculative to compel the extraordinary remedy of injunctive relief. There may be a scenario in which several of the more speculative harms alleged by Plaintiffs become concrete, imminent, and even certain. But currently the harms either fall under the general harm of lost income and its associated hardships, which is quintessentially reparable, or are simply too speculative for the Court to take the drastic and severe action of issuing a preliminary injunction.

**IV.     Other Factors**

Given this Court's finding that irreparable harm does not exist at this time, it need not analyze the remaining three factors of the preliminary injunction standard. *See Plymouth Whalers*, 325 F.3d at 717. Without making any finding or determination as to the likelihood of success on the merits, the Court notes Plaintiffs' arguments appear convincing—particularly concerning their Title VII failure to accommodate claim.

Questions loom regarding Defendant's assertion that other accommodations would create a more than de minimis harm for UT-Battelle. [Doc. 36 at 18-21]. Further, the issue as to whether

---

[3] *See, e.g.*, *Norris v. Stanley*, No. 1:21-cv-756, 2021 WL 4738827 (W.D. Mich. Oct. 8, 2021); *Harsman v. Cincinnati Childcren's Hosp. Med. Ctr.*, No. 1:21-cv-597, 2021 WL 4504245 (S.D. Ohio Sept. 30, 2021); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-cv-105, 2021 WL 4398027 (E.D. Ky. Sept. 24, 2021).

UT-Battelle was justified in issuing a blanket accommodation without individually assessing accommodations for each distinct employee remains unclear and raises significant questions. *See* [Ex. 36 at L.3., EEOC Guidance updated October 25, 2021] (introduced into the record by Defendant at the preliminary injunction hearing; explaining that "[a]n employer will need to assess undue hardship *by considering the particular facts of each situation* and will need to demonstrate how much cost or disruption the employee's proposed accommodation would involve," but also noting that "the number of employees who are seeking a similar accommodation (i.e., the cumulative cost or burden on the employer)" is also relevant) (emphasis added). For instance, the evidence appears to indicate that at least some individuals faced with this period of unpaid leave can work remotely and consideration of little more than 100 employees in a company of more than 5,000 might not be so large.

## V. Conclusions

Much can be said about the way UT-Battelle handled their accommodation processes. For a company that prides itself on the importance of its national security mission and the role it plays in protecting the interests of the United States, it is difficult to view its treatment of employees as thoughtful or prudent. It is difficult to imagine that other accommodations aside from unpaid leave were not available for at least some individuals. But given the absence of irreparable harm, the Court need not examine whether such accommodations were reasonable. Neither is it the Court's role to determine whether the company erred in issuing a one-size-fits-all accommodation for a group of employees with differing job duties and various time spent on campus. Regardless of the result of such findings, it is hard to fathom that conducting more individualized assessments was untenable for an entity with the resources of UT-Battelle. In this regard, Defendant's decisions

reflect a shocking indifference to some of its employees. These employees deserve better, as does everyone associated with UT-Battelle.

Ultimately, the law requires a finding of irreparable harm for an injunction, and this harm must be concrete and imminent—not speculative or uncertain. Plaintiffs' testimony was moving, and the Court remains sympathetic to their situation. However, the harms identified by Plaintiffs are not yet "irreparable." Therefore, Plaintiffs' Motion for Preliminary Injunction [Doc. 7] is hereby **DENIED**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**