UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JEFFREY BILYEU and JESSICA BILYEU, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No. 3:21-cv-352 |
| v. | ) | |
| | ) | Judge Atchley |
| UT-BATTELLE, LLC, | ) | |
| | ) | Magistrate Judge McCook |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant UT-Battelle, LLC's ("UT-Battelle") Motion for Summary

Judgment. [Doc. 109]. UT-Battelle seeks dismissal of Plaintiffs' Title VII claims for disparate

treatment, failure to accommodate, failure to engage in the interactive process, and retaliation. For

the reasons explained below, UT-Battelle's motion will be **GRANTED IN PART** and **DENIED**

**IN PART**.

I.      **FACTUAL BACKGROUND**

Plaintiffs Mr. Jeffrey Bilyeu and Ms. Jessica Bilyeu are employees of UT-Battelle. They

filed this lawsuit because they take issue with how UT-Battelle handled employee requests to be

exempted from its COVID-19 vaccination mandate. On August 26, 2021, UT-Battelle announced

that it would require all employees to receive the COVID-19 vaccination by October 15, 2021.

[Doc. 109-5]. Both Mr. Bilyeu and Ms. Bilyeu applied for an accommodation based on their

religious beliefs. [Doc. 109-7]. Faced with more than 100 religious accommodation requests, UT-

Battelle decided to stop interviewing applicants as to their religious sincerity and instead elected

to approve all religious accommodation requests. [Doc. 111-4 at 178–79].

UT-Battelle ultimately settled on offering unpaid leave as an accommodation to those who raised religious objections to the vaccine. [*Id.* at 219–20]. Affected employees were to begin unpaid leave on October 15, 2021, but three days before the scheduled start, Plaintiffs filed this lawsuit, and the Court partially granted their motion for a temporary restraining order ("TRO"). [Docs. 1, 24]. The Order partially granting the TRO enjoined UT-Battelle from placing any of its affected employees on unpaid leave until the Court could rule on Plaintiffs' motion for a preliminary injunction. [Doc. 24 at 4]. After the Court denied Plaintiffs' motion and reinstated UT-Battelle's vaccination policies, Mr. Bilyeu began his period of unpaid leave on November 1, 2021. [Doc. 53]. Mr. Bilyeu remained on leave until December 6, 2021. [Doc. 111-2 at 53]. He returned to work after UT-Battelle lifted its vaccination mandate. [Doc. 109 at 12]. During his approximately one month on leave, Mr. Bilyeu decided to use his accrued vacation time. [Doc. 111-2 at 50]. His vacation time covered all but three days of his absence, meaning that he was on unpaid leave for those three days. [*Id.*].

As for Ms. Bilyeu, she never went on unpaid leave and was granted a medical accommodation due to her breastfeeding. [Doc. 111-1 at 15, 43]. Ms. Bilyeu learned at the preliminary injunction hearing that UT-Battelle was offering medical accommodations to women who were currently breastfeeding. [*Id.* at 21]. Ms. Bilyeu received accommodations of enhanced testing and additional time to be vaccinated, which were the same accommodations generally offered to those who requested medical exemptions. [Doc. 109-8]. During her entire medical accommodation period, Ms. Bilyeu received her regular compensation. [Doc. 111-1 at 22].

All while these events unfolded, changes were made to Ms. Bilyeu's performance evaluation. The parties dispute the reasons for the changes and the relevant timeline. According to Ms. Bilyeu, her performance evaluation was downgraded, which negatively impacted her pay, on

2

October 27, 2021, the day after she testified at the preliminary injunction hearing. [Doc. 111 at 13–14]. Ms. Bilyeu alleges that her supervisor, Mr. Valentino Jefferson, downgraded her performance evaluation at the insistence of Mr. John Powell, who was upset with her testimony at the preliminary injunction hearing. [Doc. 111 at 14, 30]. UT-Battelle tells a different story. It explains that Mr. Jefferson first downgraded Ms. Bilyeu's performance evaluation upon discovering that Ms. Bilyeu had allowed certain documents to go unsigned. [Doc. 109 at 19–20]. He then downgraded it again due to an HR policy that prevented Ms. Bilyeu from receiving the rating he downgraded her to initially. [*Id.* at 20].

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III.   ANALYSIS

Plaintiffs assert several claims under Title VII for disparate treatment, failure to accommodate, failure to engage in the interactive process, and retaliation. The Court will address each of these claims in turn.

### A.  Disparate Treatment

To succeed on a Title VII claim for disparate treatment, a plaintiff must either present direct

evidence of discrimination or make out a prima facie case of indirect discrimination. The Sixth Circuit defines direct evidence as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). When presented with direct evidence, then, the factfinder need not draw any inferences to conclude that discrimination motivated the employer's actions. *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Plaintiffs contend that they have presented direct evidence of religious discrimination. [Doc. 111 at 26]. The Court disagrees. Plaintiffs point to numerous UT-Battelle actions as direct evidence of discrimination. These actions include, among others, UT-Battelle's failure to inform employees of their right to request a religious accommodation, its provision of lanyards to distinguish between vaccinated and unvaccinated employees, and its refusal to conduct any case-by-case assessment of religious accommodation requests. [*Id.* at 25–26]. Despite Plaintiffs' assertions to the contrary, these actions provide, at most, circumstantial evidence of unlawful discrimination. It's not as if Plaintiffs point to a supervisor's statement expressing a desire to punish employees because of their religious beliefs. That would be direct evidence of discrimination. *Bolden v. Loews Home Centers, LLC.*, 783 F. App'x 589, 598 (6th Cir. 2019) (citations omitted). To be sure, Plaintiffs' proffered evidence could lead a factfinder to draw inferences and conclude that UT-Battelle engaged in unlawful discrimination. But this means that Plaintiffs' evidence is indirect rather than direct.

Having failed to produce direct evidence of discrimination, Plaintiffs must resort to the *McDonnell Douglas* burden-shifting framework to establish a prima facie case of indirect discrimination. *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000) (citing

5

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992)). To meet their initial burden of proving a prima facie case, Plaintiffs must show that (1) they are members of a protected group; (2) were subjected to an adverse employment action; (3) were qualified for the positions they held; and (4) were treated less favorably than a similarly situated employee outside their protected group. *Id.* at 626 (citations omitted). Because Mr. Bilyeu and Ms. Bilyeu fail to establish a prima facie case for different reasons, the Court will analyze their disparate treatment claims separately.

### 1. Mr. Bilyeu's Disparate Treatment Claim

Mr. Bilyeu's disparate treatment claim fails because he cannot satisfy the second prong of his prima facie case and prove that he experienced an adverse employment action. This prong requires Mr. Bilyeu "to demonstrate the existence of a materially adverse 'change in the terms or conditions of employment because of the employer's actions.'" *Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007) (quoting *Allen v. Mich. Dep't of Corr.*, 163 F.3d 405, 410 (6th Cir. 1999)). In *Tepper*, the Sixth Circuit concluded that the plaintiff's being placed on unpaid leave did not qualify as an adverse employment action for purposes of his disparate treatment claim. *Id.* This was so because the plaintiff was "simply not being paid for the time that he has not worked." *Id.* As the Sixth Circuit explained, the plaintiff's "reduced pay corresponding with the time he did not work does not affect his employment opportunities or job status." *Id.* (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70–71 (1986).

Consistent with the Sixth Circuit's holding in *Tepper*, Mr. Bilyeu's placement on unpaid leave does not constitute a materially adverse employment action. In being placed on unpaid leave, Mr. Bilyeu was simply not to be paid for the time he did not work. It is true that Mr. Bilyeu used vacation time to cover for his period of unpaid leave, but this fact does not save his claim. An adverse employment action must result from the *employer's* actions, not because of the employee's

6

own actions. *Id.* (quoting *Allen*, 163 F.3d at 410). UT-Battelle did not force Mr. Bilyeu to use his vacation time. Instead, Mr. Bilyeu made that decision himself, meaning that his use of vacation time did not occur "because of the employer's actions." *Id.* Because UT-Battelle's only challenged action involved placing Mr. Bilyeu on unpaid leave, Mr. Bilyeu did not suffer an adverse employment action, and his disparate treatment claim fails.

### 2. Ms. Bilyeu's Disparate Treatment Claim

Ms. Bilyeu's disparate treatment claim fails for a simple reason: she is part of the group she alleges received more favorable treatment. In other words, Ms. Bilyeu cannot satisfy the fourth prong of the prima facie case, which requires her to show that comparators, or fellow employees, were similarly situated to her but received more favorable treatment. *Hall*, 215 F.3d at 626 (citations omitted). Ms. Bilyeu cannot make this showing.

The basis of Ms. Bilyeu's disparate treatment claim is that UT-Battelle treated employees who requested medical accommodations more favorably than employees like her who requested religious accommodations. [Doc. 111 at 25]. But Ms. Bilyeu indisputably received a medical accommodation and never took unpaid leave pursuant to a religious accommodation. [Doc. 109-2 at 15–17]. By Ms. Bilyeu's own admission, she was never even evaluated for a religious accommodation. [*Id.* at 16]. Ms. Bilyeu's situation renders her disparate treatment claim perplexing. She is arguing that employees who received medical accommodations were treated more favorably, even though she received a medical accommodation herself. This argument does not pass muster. As UT-Battelle points out, Ms. Bilyeu cannot pursue a disparate treatment claim while using herself as a comparator. For this reason, Ms. Bilyeu's disparate treatment claim does not survive summary judgment.

## B. Failure to Accommodate

Plaintiffs' next claim is for failure to accommodate. They allege that UT-Battelle failed to reasonably accommodate their religious beliefs when it offered unpaid leave as an accommodation. Once again, Mr. Bilyeu and Ms. Bilyeu's failure to accommodate claims fail for different reasons, so they will be assessed separately.

### 1. Mr. Bilyeu's Failure to Accommodate Claim

To prevail on a claim for failure to accommodate, a plaintiff must first establish a prima facie case of religious discrimination. *Tepper*, 505 F.3d at 514 (citing *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). This requires a plaintiff to show that (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) informed his employer about the conflict; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement. *Id.* The first two elements are not in dispute; UT-Battelle concedes for purposes of its motion that Mr. Bilyeu holds sincere religious beliefs and disclosed the conflict between his beliefs and the vaccination requirement. [Doc. 109 at 15]. At issue, then, is whether Mr. Bilyeu was "discharged or disciplined" for failing to comply with the conflicting employment requirement of vaccination.

Mr. Bilyeu cannot demonstrate that he was discharged or disciplined, and this deficiency is fatal to his claim. Courts have explained that "[t]he discharge or discipline suffered by the employee cannot be one and the same with the employer's provision of an unreasonable accommodation or its denial of a reasonable accommodation." *McCray v. Fed. Express Corp.*, No. 2:17-cv-2918, 2020 WL 4676384, at *10 (W.D. Tenn. Aug. 12, 2020) (citing *Reed v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 581 (6th Cir. 2009)). That is precisely what Mr. Bilyeu seeks to accomplish here; he argues that the accommodation

8

UT-Battelle provided constituted a disciplinary action. [Doc. 111 at 27–28]. The Sixth Circuit has rejected this line of argument before. In *Reed*, the Sixth Circuit rejected the plaintiff's failure to accommodate claim because he had not suffered any "discipline or adverse employment action other than the accommodation he claim[ed] [was] unreasonable." *Reed*, 569 F.3d at 581. The same is true here, where Mr. Bilyeu does not point to anything other than the accommodation offered to him as proof of discharge or discipline.

Beyond *Reed*, also on point is *Tepper*. There, to accommodate his observance of the Saturday Sabbath, the employer allowed the plaintiff to use vacation time or unpaid leave. *Tepper*, 505 F.3d at 512. The plaintiff asserted a failure to accommodate claim and argued that his being forced to use unpaid leave constituted a form of discipline. *Id.* at 514. Rejecting that argument, the Sixth Circuit explained that "more than loss of pay is required to demonstrate discipline or discharge." *Id.* The plaintiff was simply not being paid for the time he did not work, which was insufficient to qualify as discipline or discharge. *Id.*

The facts here warrant the same conclusion reached in *Tepper*. In being placed on unpaid leave, Mr. Bilyeu was simply not to be paid for the time he did not work, meaning he suffered no discipline or discharge. Once again, that Mr. Bilyeu use of vacation time does not change the outcome, as he was not required to do so. *Cf. Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994) (holding that "[a]n employer who permits an employee to avoid mandatory Sabbath work *only* by using accrued vacation does not 'reasonably accommodate' the employee's religious beliefs") (emphasis added). Unlike the employee in *Cooper* who was required to use vacation time as part of her religious accommodation, UT-Battelle allowed Mr. Bilyeu to take unpaid leave and did not require him to exhaust his vacation time. Mr. Bilyeu instead chose to use vacation time on his own accord. Because Mr. Bilyeu cannot demonstrate that he was disciplined or discharged, his

9

failure to accommodate claim fails.

## 2. Ms. Bilyeu's Failure to Accommodate Claim

Ms. Bilyeu's failure to accommodate claim fails because it is moot. "If the plaintiff ceases to have standing such that a live case or controversy no longer exists, the case becomes moot." *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Because mootness implicates jurisdiction, courts must dismiss moot claims, even if no party requests dismissal on those grounds.[1] *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978) (citations omitted).

Ms. Bilyeu's failure to accommodate claim necessarily takes issue with what she was offered to accommodate her religious beliefs. She contends that the offered accommodation of unpaid leave was inadequate. The inadequacy is especially apparent, according to Ms. Bilyeu, when considering the accommodations offered to those who requested medical rather than religious accommodations. [Doc. 111 at 27]. UT-Battelle employees who received medical accommodations were offered weekly testing and an extension of time to receive the vaccine.

Following the preliminary injunction hearing in this matter, Ms. Bilyeu was granted a medical exemption due to her breastfeeding and received accommodations of weekly testing and additional time to receive the vaccine. [*Id.* at 12]. She received these accommodations before being required to take unpaid leave, meaning that she was never subjected to the terms of the religious accommodation she now alleges was inadequate. [Doc. 111-1 at 23–25]. Once Ms. Bilyeu received the medical accommodation, her failure to accommodate claim became moot. She never had to

---

[1] UT-Battelle argues that Ms. Bilyeu lacks standing. [Doc. 109 at 12 n.13]. Standing concerns the plaintiff's personal stake at the commencement of the litigation whereas mootness requires that same stake to persist throughout the litigation. *Barry*, 834 F.3d at 714 (citations omitted). The Court concludes that Ms. Bilyeu's claim fails because it is moot, not because she lacked standing at the time she filed suit. Indeed, at the time Ms. Bilyeu filed suit, she had not yet been granted a medical accommodation.

take unpaid leave, and she received the accommodations she apparently wanted. Put simply, Ms. Bilyeu's standing ceased to exist once she was granted a medical accommodation, which eliminated any controversy over the adequacy of any religious accommodation. Her claim for failure to accommodate is therefore dismissed as moot.

### C. Failure to Engage in the Interactive Process

Related to their failure to accommodate claims, Plaintiffs also seek to hold UT-Battelle liable for failing to engage in the interactive process. They allege that UT-Battelle failed to conduct individualized assessments of religious accommodation requests. [Doc. 111 at 6, 22–23]. Typically, once an employee requests an accommodation, the employer and employee will engage in an interactive process, through which they attempt to identify an appropriate accommodation under the circumstances. *Cheatham v. Postmaster Gen.*, No. 20-4091, 2022 WL 1073818, at *4 (6th Cir. Apr. 11, 2022) (citing *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020)). The Sixth Circuit has held that employers are required to engage in the interactive process under the ADA. *Id.* No such requirement has been imposed under Title VII, however, and Plaintiffs' claims arise under Title VII, not the ADA. Because no Sixth Circuit case law renders the interactive process required under Title VII, Plaintiffs' claim fails.

Even if the Court applied rules from the ADA cases and concluded that Title VII mandated the interactive process, Plaintiffs' claim would still fail. This is so because in the ADA cases, the Sixth Circuit has determined that a plaintiff may only assert a claim for failure to engage in the interactive process after first establishing a prima facie case of failure to accommodate. *Id.* at *4–5. As the Court already explained, neither Plaintiff established a prima facie case of failure to accommodate, which means that their interactive process claim fails even under the more favorable ADA framework.

11

### D. Retaliation

Plaintiffs' final claim alleges that UT-Battelle engaged in unlawful retaliation. To establish a prima facie case of retaliation, the employee must show that (1) he engaged in protected activity; (2) the employer was aware of the protected activity; (3) the employer subsequently took adverse employment action; and (4) a causal connection exists between the protected activity and adverse employment action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007) (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)). The Court will consider each Plaintiff's retaliation claim separately because they rely on different facts and because Mr. Bilyeu's claim fails while Ms. Bilyeu's survives.

### 1. Mr. Bilyeu's Retaliation Claim

Mr. Bilyeu has not established a prima facie case of retaliation because he did not suffer an adverse employment action. Mr. Bilyeu contends that the accommodation offered to him, unpaid leave, was intended as an adverse employment action. [Doc. 111 at 29]. He does not point to any other alleged adverse employment actions to support his retaliation claim. [*Id.* at 29–30]. Logically, then, Mr. Bilyeu's argument is that UT-Battelle offered its accommodation of unpaid leave in retaliation for his act of requesting an accommodation.

Courts have considered and rejected this argument before. They have found that an employer's alleged failure to accommodate cannot serve as an adverse employment action to support a retaliation claim. *See, e.g.*, *Moore-Fotso v. Bd. of Educ.*, 211 F. Supp. 3d 1012, 1037–38 (N.D. Ill. 2016) (finding that an employer's alleged failure to accommodate "cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim"). If that were allowed, "almost every failure to accommodate claim would be simultaneously a retaliation claim." *Pagliaroni v. Daimler Chrysler Corp.*, No. 04-C-2013,

12

2006 WL 2668157, at *9 (E.D. Wis. Sept. 15, 2006). That arrangement would defeat the purpose of recognizing separate causes of action for failure to accommodate and retaliation. Because Mr. Bilyeu does not identify any potential adverse employment actions besides UT-Battelle's alleged failure to accommodate, his retaliation claim must fail.

### 2. Ms. Bilyeu's Retaliation Claim

Like Mr. Bilyeu, Ms. Bilyeu cannot use UT-Battelle's alleged failure to accommodate as the adverse employment action to support her retaliation claim. Ms. Bilyeu offers an additional potential adverse employment action to support her claim, however. Specifically, she alleges that her performance evaluation was downgraded on October 27, 2021, the day after she testified at the preliminary injunction hearing in this matter. [Doc. 111 at 13–14]. Because Ms. Bilyeu has established a prima facie case of retaliation and created a jury question as to pretext, the Court will allow her claim to proceed to trial.

The first two elements of Ms. Bilyeu's prima facie case are not in dispute. UT-Battelle never argues that Ms. Bilyeu did not engage in protected activities, whether it be her filing of this lawsuit or her testifying at the preliminary injunction hearing. Instead, UT-Battelle assumes for purposes of its motion that Ms. Bilyeu engaged in protected activity. [Doc. 109 at 19]. Nor does UT-Battelle dispute the second element and allege that it was unaware of Ms. Bilyeu's protected activities.

Regarding the third element, UT-Battelle never offers argument as to whether the downgrade of Ms. Bilyeu's performance evaluation was an adverse employment action or not. Its discussion of the performance evaluation pertains entirely to the causation element and does not address the adverse employment action element. [*See id.* at 19–21]. In any event, the Court concludes that the downgrade of Ms. Bilyeu's performance evaluation does qualify as an adverse

employment action. The definition of an adverse employment action is broader for retaliation claims as compared to disparate treatment claims. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–67 (2006)). With retaliation claims, an employer's action is adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 639 (6th Cir. 2009)).

The downgrade in Ms. Bilyeu's performance evaluation satisfies this broad definition. Ms. Bilyeu's performance evaluation was originally submitted as "successful." [Doc. 111-1 at 52]. In October of 2021, Mr. Jefferson downgraded Ms. Bilyeu's performance evaluation first to "building" and then to "improvement expected." [Doc. 111-3 at 150–53]. UT-Battelle employees are eligible for annual raises based on their most recent performance evaluation. [Doc. 111-5 at 32]. So, Ms. Bilyeu received a reduced raise considering her lower performance evaluation. [Doc. 111 at 15; Doc. 111-1 at 50–51]. The prospect of reduced future compensation could certainly dissuade a reasonable employee from engaging in protected activity, such as testifying at a preliminary injunction hearing. Consequently, the downgrade in Ms. Bilyeu's performance evaluation qualifies as an adverse employment action.

Unlike the first three elements of Ms. Bilyeu's prima facie case, the final element of causation is very much in dispute. The parties' dispute stems from their competing accounts of the timeline pertaining to Ms. Bilyeu's performance evaluation. UT-Battelle asserts that Mr. Jefferson changed Ms. Bilyeu's performance evaluation to "building" on October 11, 2021, the day before she filed this lawsuit and two weeks before she testified at the preliminary injunction hearing. [Doc. 109 at 20]. It also acknowledges that due to a company policy preventing a "building"

evaluation in consecutive years, Ms. Bilyeu's evaluation was later modified to "improvement expected," though it does not provide a date for this subsequent modification. [*Id.*]. Meanwhile, Ms. Bilyeu contends that her performance evaluation was changed from "successful" to "improvement expected" on October 27, 2021, which came one day after her testimony at the preliminary injunction hearing. [Doc. 111 at 14].

Both parties' versions of events omit certain details. UT-Battelle's version leaves out when the evaluation was changed to "improvement expected," and Ms. Bilyeu's ignores that her evaluation was first modified to "building" before later being switched to "improvement expected." Though Mr. Jefferson's deposition testimony at times lacks clarity, he expressed that he initially rated Ms. Bilyeu's performance as "successful." [Doc. 111-3 at 124]. Shortly after entering that rating, Mr. Jefferson received new information on October 6 or 7, 2021, which led him to believe that Ms. Bilyeu deserved a lower rating of "building." [*Id.* at 126–28, 138–39]. He specifically learned that documents Ms. Bilyeu was responsible for had gone unsigned, and this led him to change Ms. Bilyeu's performance evaluation to "building" on October 11, 2021. [*Id.* at 127, 150].

Mr. Jefferson testified that after he entered the "building" rating, he had discussions with HR between October 11 to October 25, 2021. [*Id.* at 150]. From those discussions, Mr. Jefferson learned that Ms. Bilyeu could not receive a "building" rating in consecutive years, so he was directed to change her rating to "improvement expected." [*Id.* at 141, 150]. He testified that he "[p]robably" modified "the performance rating" on October 27, 2021, which was one day after Ms. Bilyeu testified at the preliminary injunction hearing. [*Id.* at 151]. An exhibit attached to Mr. Jefferson's deposition lends some support to his testimony. That exhibit—a computer screenshot of Ms. Bilyeu's evaluation history—reveals that Mr. Jefferson modified Ms. Bilyeu's performance

evaluation on October 11, 2021, and October 27, 2021. [*Id.* at Ex. 12]. Nevertheless, the exhibit does not provide any specific details regarding the modifications; it shows that modifications were made, but it does not specify the ratings associated with each modification, such as "building" or "improvement expected." [*Id.*].

To satisfy the causation element of her prima facie case of retaliation, Ms. Bilyeu "must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (internal quotation marks and citations omitted). The Sixth Circuit has explained that temporal proximity alone is sufficient to establish causation, particularly when "an adverse employment action occurs very close in time after an employer learns of a protected activity." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

The record establishes that Ms. Bilyeu testified at the preliminary injunction hearing on October 26, 2021, and her performance evaluation was modified the very next day. Considering this degree of temporal proximity, a jury could certainly infer that the modification to Ms. Bilyeu's performance evaluation was the product of retaliation. *Montell*, 757 F.3d at 506 (holding that a one day lapse in time between the protected activity and adverse employment action was sufficient to create a jury question as to causation). Ms. Bilyeu does not rely solely on temporal proximity to support her retaliation claim, however. She also contends that when she returned to work following the preliminary injunction hearing, Mr. Jefferson confronted her about a document she testified to and expressed his displeasure. [Doc. 111-1 at 51–52]. According to Ms. Bilyeu, Mr. Jefferson had received a visit from his supervisor, Mr. John Powell, about the proffered testimony. [*Id.* at 52]. Mr. Jefferson did not recall speaking with Mr. Powell on this subject, but he acknowledged that it

16

did come up at some point. [Doc. 111-3 at 155–56]. If a jury chose to believe Ms. Bilyeu's account, it could lend additional support to her retaliation claim. The temporal proximity, along with Mr. Jefferson and Mr. Powell's alleged frustration, provides sufficient evidence from which a jury could infer that the modification to Ms. Bilyeu's performance evaluation was retaliatory.

Notwithstanding the importance of temporal proximity in assessing the causation element, the Court's inquiry does not end there. This is because temporal proximity *cannot* serve as evidence of causation if the employer, in taking the adverse employment action, merely "proceeds along lines previously contemplated." *Montell*, 757 F.3d at 507 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). In other words, if the employer had already considered the adverse employment action before the employee engaged in the protected activity, the closeness in time between the protected activity and adverse employment action provides no evidence to support causation. *Id.* The import of the "previously contemplated" rule is straightforward: if UT-Battelle contemplated downgrading Ms. Bilyeu's performance evaluation before she testified at the preliminary injunction hearing, then the one day lapse between those two events fails to establish causation.

Numerous cases have applied the "previously contemplated" rule. In *Reynolds v. Extendicare Health Services, Inc.*, the Sixth Circuit held that the employer previously contemplated placing the plaintiff on a performance improvement plan one week before her protected activity. 257 F. App'x 914, 920 (6th Cir. 2007). It reached this conclusion because the employer presented unrebutted evidence regarding the timing of events, including that a supervisor had drafted the plan before the plaintiff's protected activity. *Id.* at 916. *Reynolds v. Federal Express Corporation* reached the same conclusion. 544 F. App'x 611 (6th Cir. 2013). In that case, the Sixth Circuit also disregarded evidence of temporal proximity because the employer had indisputably

17

contemplated firing the plaintiffs before they engaged in protected activity. *Id.* at 615. A supervisor had prepared spreadsheets and drafted letters concerning the plaintiffs' performance issues before they complained of discrimination. *Id.*

A common denominator in the *Reynolds* cases is that they both included documentary evidence to support the employer's timeline of events. The documentary evidence, whether it was plans, spreadsheets, or letters, firmly established that the employers had contemplated the adverse employment actions before the plaintiffs engaged in their protected activities. No such documentary evidence exists in this case. Mr. Jefferson's deposition testimony is the only evidence tending to show that UT-Battelle contemplated modifying Ms. Bilyeu's performance evaluation before she testified at the preliminary injunction hearing on October 26, 2021.[2] If believed, Mr. Jefferson's testimony could suggest that Ms. Bilyeu's testimony at the preliminary injunction hearing did not motivate the change in her performance evaluation, but the Court cannot assess the credibility of witnesses at summary judgment. And when considering Ms. Bilyeu's deposition testimony about Mr. Jefferson and Mr. Powell's reactions to her protected activity, factual disputes remain as to the issue of causation.

For the reasons discussed above, Ms. Bilyeu has presented a prima facie case of retaliation. The burden now shifts to UT-Battelle "to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Niswander*, 529 F.3d at 720 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)). UT-Battelle does not directly argue that Ms. Bilyeu's performance evaluation was downgraded for legitimate, nondiscriminatory reasons, but it implicitly states as much through its discussion of Mr. Jefferson's deposition testimony. [Doc. 109 at 19–20]. UT-

---

[2] True, the computer screenshot of Ms. Bilyeu's evaluation history appears to show that Ms. Bilyeu's evaluation was modified on October 11, 2021, and October 27, 2021. [Doc. 111-3 at Ex. 12]. But that document offers no insight as to whether Mr. Jefferson had any discussions, as he testified he did, with HR from October 11, 2021, to October 25, 2021, regarding the need to modify Ms. Bilyeu's performance evaluation from "building" to "improvement expected."

18

Battelle recounts Mr. Jefferson's testimony, where he explained that he first changed Ms. Bilyeu's evaluation from "successful" to "building" upon his discovery of unsigned documents. [*Id.* at 20]. He then changed it from "building" to "improvement expected" after learning of an HR policy that prohibited "building" evaluations in consecutive years. [*Id.*]. Mr. Jefferson's testimony, if believed, would provide evidence that UT-Battelle downgraded Ms. Bilyeu's performance evaluation not based on retaliation but for legitimate, nondiscriminatory reasons pertaining to her performance history and an existing HR policy.

Because UT-Battelle offered legitimate, nondiscriminatory reasons for its modifications to Ms. Bilyeu's performance evaluation, the burden shifts back to Ms. Bilyeu to produce evidence from which a reasonable jury could find that the proffered reasons are pretextual. *Montell*, 757 F.3d at 504 (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009). To establish pretext, Ms. Bilyeu must show that the proffered reasons "(1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) [were] insufficient to warrant her removal." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 421 (6th Cir. 2021) (citing *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009)). The Sixth Circuit has explained that "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Id.* (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)).

On this record, a reasonable jury could conclude that UT-Battelle's stated reasons for modifying Ms. Bilyeu's performance evaluation are pretextual. This conclusion is based largely on the same evidence the Court considered when evaluating the causation element of the prima facie case. Namely, the one day lapse in time between Ms. Bilyeu's testimony at the preliminary injunction hearing and the modification of her performance evaluation, along with Ms. Bilyeu's testimony regarding Mr. Jefferson and Mr. Powell's negative reactions upon her return to work,

could support a jury finding of pretext. Because the record establishes a prima facie case of retaliation and a genuine factual dispute as to pretext, Ms. Bilyeu's claim survives summary judgment.

## IV.    CONCLUSION

Considering the foregoing, UT-Battelle's Motion for Summary Judgment [Doc. 109] is **GRANTED IN PART** and **DENIED IN PART**. Only Ms. Bilyeu's retaliation claim may proceed to trial. All other claims, except for Ms. Bilyeu's failure to accommodate claim, are **DISMISSED WITH PREJUDICE**. Ms. Bilyeu's failure to accommodate claim is **DISMISSED AS MOOT**.

SO ORDERED.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**