IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JESSICA BILYEU, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:21-cv-0352 |
| | ) | |
| v. | ) | Judge Charles E. Atchley |
| | ) | |
| UT-BATTELLE, LLC, | ) | Magistrate Judge Jill E. McCook |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S TRIAL BRIEF**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1
ARGUMENT ............................................................................................................... 2
I.     The Court Should Reject UTB's Request for a Complete Prohibition on Mrs. Bilyeu Introducing Evidence About her Protected Activity. .................... 2
II.    The Court Should Reject UTB's Exhibit-Specific Objections. ......................... 6
III.   The Court Should Reject UTB's Proffered Jury Verdict Form ........................ 9
CONCLUSION .......................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Barrow v. City of Cleveland*,
  773 F.App'x 254 (6th Cir. 2019) ............................................................................ 9

*E.I. Dupont De Nemours & Co. v. Kolon Indus.*,
  564 F. App'x 710 (4th Cir. 2014) ........................................................................... 6

*Gardner-Lozada v. SEPTA*,
  No. 13-cv-2755, 2015 WL 803096 (E.D. Pa. Feb. 26, 2015) .............................. 3, 4

*Hines v. Town of Vonore*,
  912 F. Supp. 2d 628 (E.D. Tenn. 2012) ................................................................. 9

*Kolstad v. Am. Dental Ass'n*,
  527 U.S. 526 (1999) ............................................................................................. 12

*Lacey v. Doorstep Shelter Subsidiary of MES, Inc.*,
  No. 2:03-cv-75023 (E.D. Mich. Dec. 6, 2005) ...................................................... 7

*Michael v. Caterpillar Fin. Servs. Corp.*,
  496 F.3d 584 (6th Cir. 2007) .............................................................................. 3, 9

*Odom v. Mobile Infirmary*,
  No. 06-cv-0511, 2008 WL 2157137 (S.D. Ala. May 20, 2008) ............................. 5

*Petry v. Tex. Dep't of Criminal Just.*,
  No. 1:18-cv-0373, 2021 WL 9881597 (E.D. Tex. June 21, 2021) ......................... 4

*Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*,
  880 F.3d 791 (6th Cir. 2018) ............................................................................... 11

*Smith v. City of Salem*,
  378 F.3d 566 (6th Cir. 2004) ................................................................................. 9

*Taylor v. Fluor Corp.*,
  No. 6:17-cv-1875, 2020 WL 614077 (D.S.C. Feb. 10, 2020) ...................................... 6

*Woodson v. Scott Paper Co.*,
  109 F.3d 913 (3d Cir. 1997) ............................................................................................... 3

**Statutes**

42 U.S.C. 1981 ......................................................................................................................... 11

**Rules**

Fed. R. Evid. 401 ....................................................................................................................... 7

# INTRODUCTION

Pursuant to Paragraph 7(b) of this Court's Scheduling Order (Doc. 99), Plaintiff Jessica Bilyeu submits this trial brief to address two issues. *First*, Defendant UT-Battelle ("UTB") improperly seeks to limit Mrs. Bilyeu's ability to introduce evidence supporting her retaliation claim. In her Amended Complaint, Mrs. Bilyeu claimed that UTB violated Title VII of the Civil Rights Act of 1964 by discriminating against her for her religious beliefs, subjecting her to disparate treatment, failing to provide her with a reasonable accommodation, and retaliating against her. Am. Compl. ¶¶ 5, 64–75, 149–65 (Doc. 63).

After the Court's March 22, 2024 summary-judgment order, the only claim remaining for trial is Mrs. Bilyeu's claim that UTB retaliated against her by lowering her 2020–2021 performance rating. *See* Mem. Op. & Order (Doc. 119). Specifically, Mrs. Bilyeu claims that UTB lowered her rating in response to her participating in protected activity, which included requesting a reasonable accommodation for her religious beliefs under Title VII, filing the claims in this lawsuit, filing a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and testifying in the preliminary injunction hearing in this case. Compl. ¶¶ 58, 59, 62, 120, 124, 125 (Doc. 1); Am. Compl. ¶¶67–68, 74 (Doc. 63); Def.'s Obj. at 9 (discussing protected activity) (Doc. 124); Mem. Op. & Order at 13 (discussing protected activity) (Doc. 119).

Despite this protected activity being a core part of Mrs. Bilyeu's remaining retaliation claim, UTB seeks to prevent her from introducing evidence that would explain this protected activity or that would discuss the contents of her objections to

UTB's actions. But the law is not on UTB's side, and the Court should reject UTB's attempt to hamstring Mrs. Bilyeu in her effort to carry her burden of demonstrating that she engaged in protected activity when she asserted her rights under Title VII and objected in multiple fora to UTB's refusal to provide her with a religious accommodation to the company's COVID-19 vaccine mandate.

*Second*, UTB's proposed verdict form relies on misunderstandings of the applicable law. The primary disagreements involve: (1) the wording of Question 2, which addresses the second element of Mrs. Bilyeu's retaliation claim; and (2) whether the jury may consider awarding backpay damages to Mrs. Bilyeu regardless of whether it decides to award her compensatory or punitive damages. UTB's proffered jury verdict form is confusing and misleading on both items and should be rejected.

## ARGUMENT

The Court should reject UTB's suggestion that Mrs. Bilyeu cannot introduce any evidence about the substance of her protected activity. Additionally, the Court should reject the related objections UTB raises regarding the exhibits Mrs. Bilyeu has identified for potential use at trial. Finally, the Court should reject UTB's proffered verdict form, which relies on an incorrect understanding of the law.

**I.     The Court Should Reject UTB's Request for a Complete Prohibition on Mrs. Bilyeu Introducing Evidence About her Protected Activity.**

UTB contends that Mrs. Bilyeu should not be permitted to introduce evidence about its COVID-19 vaccine mandate or her accommodation request, because all that remains is "the narrow issue of Ms. Bilyeu's retaliation claim related to the

2

modification of her performance review." Def.'s Objs. at 1. But UTB ignores that Mrs. Bilyeu has the burden at trial of establishing, among other things, that she engaged in protected activity. Mem. Op. at 12 (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007)). Here, Mrs. Bilyeu's protected activity included her objections to how UTB implemented its mandate and how UTB refused to provide a reasonable accommodation for her religious beliefs. While UTB may not want a jury to hear about Mrs. Bilyeu's objections to its actions, that is not a sufficient reason to force her to try her retaliation claim with one arm tied behind her back.

Indeed, that is why other courts have rejected attempts by defendants to prevent plaintiffs from introducing evidence about the circumstances surrounding protected activity. For instance, the Eastern District of Pennsylvania rejected a similar argument, explaining that "[e]vidence and testimony of [plaintiff's] prior complaint is relevant because it helps to establish that she engaged in protected activity, and protected activity is an element of retaliation claims." *Gardner-Lozada v. SEPTA*, No. 13-cv-2755, 2015 WL 803096, at *4 (E.D. Pa. Feb. 26, 2015) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)). And, the court continued, this evidence is not only relevant, but there was no "unfair risk of prejudice" that would "substantially outweigh[] the probative value of such evidence." *Id.* That was because the plaintiff was not entering the evidence "for the purpose of proving those [dismissed] allegations," but she was "seek[ing] to prove an essential element of her retaliation claim by introducing evidence of the underlying activity that allegedly prompted the retaliation." *Id.*

So too here. Mrs. Bilyeu must prove that she engaged in protected activity. And that protected activity includes her requesting a religious accommodation, filing administrative and district court complaints challenging UTB's refusal to provide reasonable accommodations to its COVID-19 vaccine mandate, and testifying in this case about the basis for those claims. Contrary to UTB's suggestion (Defs.' Objs. at 1), Mrs. Bilyeu does not plan to try her dismissed Title VII claims. Those now-dismissed claims can be addressed on appeal. Mrs. Bilyeu only intends to introduce evidence about her protected activity to "prove an essential element of her retaliation claim[.]" *Gardner-Lozada*, 2015 WL 803096, at *4.

UTB's rejoinder will, no doubt, be that Mrs. Bilyeu can testify that she participated in protected activity, provided that she does not explain *why* she did so. Here again, that argument has been rejected, and for good reason.

In *Petry v. Texas Department of Criminal Justice*, the defendant sought to exclude "any evidence concerning more than the alleged fact that Plaintiff made a report protected by Title VII[.]" No. 1:18-cv-0373, 2021 WL 9881597, at *2 (E.D. Tex. June 21, 2021). According to the defendant, testimony about plaintiff's underlying sexual harassment allegation would "confuse and inflame the jury." *Id*. The *Petry* court correctly rejected that argument, noting that the "Plaintiff must establish that she engaged in protected activity," which may include evidence about "the existence and/or the extent of the alleged sexual harassment," because that "may make it more likely that Plaintiff voiced a complaint about such conduct." *Id*.

The same is true here. Mrs. Bilyeu's testimony about UTB's vaccine mandate and accommodation process makes it more likely that Mrs. Bilyeu engaged in protected activity by requesting a religious accommodation and challenging UTB's response.

On this point, UTB cannot overcome the clear relevance of this evidence by focusing on the risk of undue prejudice. Def.'s Objs. at 3. Rather, as another court has explained, "counsel's opening statements and closing arguments will delineate for the jury precisely which claims are before them." *Odom v. Mobile Infirmary*, No. 06-cv-0511, 2008 WL 2157137, at *1 (S.D. Ala. May 20, 2008). And the jury instructions will do the same. *See id.* For this reason, the court in *Odom* rejected the defendant's attempt to prevent the plaintiff from referencing "harassment" in support of her retaliation claim after the court had dismissed her racial harassment claim. *Id.* Here, counsel for UTB will have ample opportunity to explain what is at issue in this case, and the Court's jury instructions will do likewise.

Of course, Mrs. Bilyeu is equally mindful of the need to protect against jury confusion and against the risk of a trial within a trial. To that end, Mrs. Bilyeu does not intend to introduce the same amount of evidence about the vaccine mandate and accommodation process as she would have if those claims were proceeding to trial. Indeed, after the Court's summary-judgment order, Mrs. Bilyeu significantly reduced her planned exhibits and witnesses. *Compare* Doc. 114, *with* Doc. 123. But the Court should reject UTB's attempt to prevent Mrs. Bilyeu from introducing any evidence about her basis for engaging in protected activity.

5

## II. The Court Should Reject UTB's Exhibit-Specific Objections.

For many of the same reasons, UTB's objections to several of Mrs. Bilyeu's exhibits are misplaced. Before discussing the details of those objections, however, Mrs. Bilyeu notes that UTB's objections are procedurally out of place. As the District of South Carolina explained recently, it is "inadvisable to grant categorical relief barring all evidence" underlying protected activity before trial because "'a court is often wise to await the unfolding of evidence before the jury before undertaking to make definitive rulings on the likely probative value of disputed evidence.'" *Taylor v. Fluor Corp.*, No. 6:17-cv-1875, 2020 WL 614077, at *3 (D.S.C. Feb. 10, 2020) (quoting *E.I. Dupont De Nemours & Co. v. Kolon Indus.*, 564 F. App'x 710, 715 (4th Cir. 2014)). For that reason, the court refused to "engage in a carte blanche exclusion of all evidence" of the underlying complaints because, among other things, that evidence is "undoubtedly … relevant and necessary" to explaining "the genesis of Plaintiff's claims in this lawsuit" and also to "support[ing] Plaintiff's overarching theory of a culture of retaliation[.]" *Id.* Accordingly, UTB's objections should be addressed in the context of trial, when the parties and the Court will have a better sense for how the planned evidence fits within the remaining claim.

However, as discussed below, UTB's exhibit-specific objections are also substantively misguided. Each of these is discussed in turn with Exhibits identified as they were described in Defendant's Objection (Doc. 124).

*Bilyeu's EEOC Charge Documents* (Expects to Offer Exs. 2 and 3). In objecting to these exhibits, UTB misunderstands their use. *See* Def.'s Objs. at 2–3. UTB argues that they should be excluded because they "relate[] to Plaintiff's now-dismissed

6

claims[,]" and they "make[] no mention of the very narrow claim that remains before this Court[.]" *Id.* That is not the point.

Rather, Mrs. Bilyeu will show at trial that UTB downgraded her performance rating *because of* these EEOC filings, which are part of her protected activity. *See* Am. Compl. ¶ 74. Thus, evidence about Mrs. Bilyeu's EEOC charge is relevant to her remaining claim, and UTB offers nothing beyond speculation to suggest that its introduction may "induc[e] the jury to decide the case based on sympathy for Plaintiff[.]" Def.'s Objs. at 3.

The brief decision in *Lacey v. Doorstep Shelter Subsidiary of MES, Inc.*, No. 2:03-cv-75023 (E.D. Mich. Dec. 6, 2005) (Doc. 157), does not support UTB's argument. Rather, that decision reached the undisputed conclusion that "an elaborate attempt to try the case with evidence that relates only to dismissed claims is inappropriate." *Lacey*, Slip Op. at 3 (citing Fed. R. Evid. 401). Mrs. Bilyeu does not seek to try other claims, but rather she should be permitted to testify that she filed an EEOC charge, and she should be permitted to introduce as an exhibit the document she filed to confirm her protected activity.

*Accommodation Documents* (Expects to Offer Exs. 4–6, 9, 17, 25, 31; May Offer Ex. 6). UTB also seeks to exclude various exhibits showing that Mrs. Bilyeu requested a religious accommodation. Def.'s Objs. at 3–4. Here again, this is part and parcel of Mrs. Bilyeu's remaining retaliation claim because Mrs. Bilyeu will show that UTB's decision to downgrade her performance rating was the direct result of her

7
Case 3:21-cv-00352-CEA-JEM Document 125 Filed 04/03/24 Page 10 of 16 PageID #: 2386

requesting an accommodation and challenging UTB's failure to provide a reasonable accommodation.

Mrs. Bilyeu does not intend to devote significant time to the underlying accommodation process, but she must be permitted to explain that UTB issued a mandate, that she sought an accommodation from that mandate for religious reasons, that UTB responded by telling Mrs. Bilyeu that she would be placed on indefinite, unpaid leave, and that UTB downgraded her performance rating when she sought relief from UTB's actions. These exhibits are directly relevant to these facts, and UTB offers little support for its request to exclude them. Remarkably, UTB even seeks to exclude evidence of Mrs. Bilyeu's discussion about these matters with the very supervisor—Valentino Jefferson—who Mrs. Bilyeu claims was part of the decision making that led to UTB downgrading her performance rating. Def.'s Objs. at 4. That objection underscores the interconnection between Mrs. Bilyeu's protected activity and UTB's retaliatory response.

*UTB COVID-19 Policies* (Expects to Offer Exs. 7, 8, 10–16, 18–24, 30, 32; May Offer Exs. 1, 2, and 8). UTB also objects to Mrs. Bilyeu introducing evidence about its COVID-19 policies and mandate. Def.'s Objs. at 4–5. While Mrs. Bilyeu agrees that there is little basis for devoting extended time at trial to discussing the details of UTB's policy and its implementation, the reasons for Mrs. Bilyeu's objections help to explain her protected activity. Moreover, UTB's position on its mandate and accommodations will help to show why it responded negatively to Mrs. Bilyeu's speaking publicly in opposition to UTB's unlawful actions.

*Complaint and Exhibits* (May Offer Ex. 9). Finally, UTB objects to Mrs. Bilyeu introducing her Complaint and exhibits. Def.'s Objs. at 5–8. In the main, UTB objects because it is not sure which complaint Mrs. Bilyeu proposes to use at trial. Had UTB conferred with Mrs. Bilyeu about this, counsel would have gladly explained. For the sake of clarity, Mrs. Bilyeu explains that this exhibit would consist of the original complaint (Doc. 1) she filed, and the Notice of Right to Sue that was attached to Mrs. Bilyeu's amended complaint (Doc. 63-2). This is the complaint that Mrs. Bilyeu filed shortly before UTB downgraded her performance rating, and that complaint is directly relevant to her remaining retaliation claim.

## III. The Court Should Reject UTB's Proffered Jury Verdict Form.

UTB's proffered jury verdict form should be rejected because it is misleading and confusing on two issues, each of which is discussed below.

*Question 2—UTB's Knowledge of Protected Activity.* In both parties' proposed jury verdict forms, Question 2 addresses the second element of Mrs. Bilyeu's *prima facie* case requirement: That "the defendant knew [she] engaged in this protected activity." *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004); *see also Michael*, 496 F.3d at 595. When the defendant is an entity, the individual decision-maker's knowledge of the plaintiff's protected activity can be relevant to the second prong. *See, e.g. Hines v. Town of Vonore*, 912 F. Supp. 2d 628, 646 (E.D. Tenn. 2012). However, it is well-settled that a defendant entity's knowledge can be established by inference based on the entity's actions. *See Barrow v. City of Cleveland*, 773 F.App'x 254, 262 (6th Cir. 2019). Moreover, there could be multiple decision-makers or people who influenced the defendant to take the adverse action. *Id.* at 262 ("Nevertheless, a

9

reasonable jury could have found that the timing and circumstances of the policy change suggested that the relevant policymakers within the City were aware of [plaintiff's] complaint.")

Here, the Court should reject UTB's proposed Question 2 to ensure that this question accurately reflects that the ultimate question as to the second element of Mrs. Bilyeu's *prima facie* case is whether UTB had knowledge of her protected activity—whether that knowledge is established by direct evidence or by inference, and whether that knowledge is based on the knowledge and actions of a single person or multiple individuals.

UTB's version of Question 2 inaccurately asks the jury to focus solely on the knowledge of a single person—Valentino Jefferson—who UTB has also inaccurately labelled "the decision-maker." This is misleading because it is contrary to well-settled law, as discussed above, and it is contrary to the evidence that is expected to be presented at trial. Therefore, UTB's version of Question 2 should be rejected, and Mrs. Bilyeu's proffered version of Question 2 should be incorporated into the final jury verdict form.

*Questions 6–10: Damages.* Each party's proffered verdict form addresses damages in Questions 6–10. However, UTB's formulation of these questions should be rejected because they are confusing and misleading in two respects: (1) UTB fails to include an instruction making clear that the jury should consider whether to award Mrs. Bilyeu backpay; and (2) UTB incorrectly suggests that the jury cannot award backpay or punitive damages unless the jury also awards compensatory damages.

*First*, UTB proposes placing Question 10 regarding backpay on a separate page by itself, at the end of the jury verdict form, and after all other damages questions. Unlike the other questions, UTB's proffered form does not include any instruction leading the jury to answer Question 10—whether to award backpay.

This approach conflicts with well-settled authority, which confirms that a successful Title VII plaintiff is presumed to be entitled to backpay. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018). There is no justification for placing this question on a separate page, apart from the other damages questions, and without any instruction to the jury to consider whether to award backpay. UTB's placement of and lack of instruction on Question 10 is confusing and misleading and should be rejected.

*Second*, UTB's proffered jury verdict form is misleading and confusing because it inaccurately instructs the jury not to consider awarding backpay damages or punitive damages if the jury declines to award compensatory damages. Question 6 of UTB's proffered form addresses compensatory damages. If the jury finds that Mrs. Bilyeu has not proven that she is entitled to compensatory damages, UTB's proffered form tells the jury to "stop" and not consider whether to award backpay damages. That is incorrect.

Compensatory damages and backpay are two separate remedies under Title VII. *See* 42 U.S.C. 1981(b). A jury can award one, both, or neither of them. *See Pittington*, 880 F.3d at 799. If the jury awards either compensatory damages or

backpay, it can also consider whether to award punitive damages. *See* 42 U.S.C. § 1981(b)(1); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533–34 (1999).

UTB's proffered jury verdict form improperly instructs the jury that it cannot consider whether to award backpay unless it also awards compensatory damages. *See* Question 6 (Instructing the jury to "stop" if it answers "no" on the question of compensatory damages). Additionally, UTB's proposed verdict form improperly fails to instruct the jury to consider whether to award punitive damages if the jury awards backpay—even if compensatory damages are not awarded.

Accordingly, the Court should reject Questions 6–10 on UTB's proffered jury verdict, and Mrs. Bilyeu's proffered version of Questions 6–10 should be incorporated into the final jury verdict form.

## CONCLUSION

After UTB imposed its COVID-19 vaccine mandate, Mrs. Bilyeu engaged in protected activity when she asserted her right to request a reasonable accommodation under Title VII and challenged the ways in which UTB refused to provide her with a reasonable accommodation for her religious objections to receiving that vaccine. That caused UTB to retaliate against her by downgrading her performance rating. While Mrs. Bilyeu's accommodation-related claims are no longer proceeding to trial, these events are nonetheless relevant to explaining why Mrs. Bilyeu engaged in protected activity, and they provide a basis for a jury to infer that UTB modified Mrs. Bilyeu's performance rating for retaliatory reasons. The Court should not countenance UTB's attempt to deprive Mrs. Bilyeu of the opportunity to present evidence to the jury that would support a core element of her claim.

Further, the Court should reject UTB's proffered verdict form, which would confuse and mislead the jury regarding the second prong of Mrs. Bilyeu's *prima facie* claim and the jury's obligation to consider all remedies available to Mrs. Bilyeu under Title VII.

**RESPECTFULLY SUBMITTED** this 3rd day of April, 2024.

/s/ Melissa B. Carrasco
Melissa B. Carrasco (BPR # 029094)
Carrasco Trump, PLLC
PO Box 7404
Knoxville, TN 37921
Telephone: 865-343-7844
Email: melissa@carrascolawgroup.com

/s/ Brian J. Field
Mark R. Paoletta*
Gene C. Schaerr*
Brian J. Field*
Nicholas P. Miller*
Annika Boone Barkdull*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com
gschaerr@schaerr-jaffe.com
bfield@schaerr-jaffe.com
nmiller@schaerr-jaffe.com
abarkdull@schaerr-jaffe.com

* Admitted *pro hac vice*

**Attorneys for Plaintiff**