**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: September 29, 2025

Ms. Melissa B. Carrasco
Carrasco Trump, P.O. Box 7404
Knoxville, TN 37921

Mr. Brian Field
Mr. Mark Richard Alan Paoletta
Schaerr Jaffe
1717 K Street, N.W., Suite 900
Washington, DC 20006

Mr. Keith D. Frazier
Ogletree Deakins
401 Commerce Street, Suite 1200
Nashville, TN 37219

Mr. David Lawrence Schenberg
Ogletree Deakins, 7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105

        Re:  Case No. 24-5418, *Jeffrey Bilyeu, et al v. UT-Battelle, LLC*
            Originating Case No. : 3:21-cv-00352

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                              Yours very truly,

                              Kelly L. Stephens, Clerk

                              Cathryn Lovely
                              Deputy Clerk

cc: Ms. LeAnna Wilson

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0266p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JEFFREY BILYEU; JESSICA BILYEU,

        *Plaintiffs-Appellants*,

    *v.*

UT-BATTELLE, LLC,

        *Defendant-Appellee*.

No. 24-5418

---

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:21-cv-00352—Charles Edward Atchley, Jr., District Judge.

Argued: February 6, 2025

Decided and Filed: September 29, 2025

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Brian Field, SCHAERR | JAFFE LLP, Washington, D.C., for Appellants. Keith D. Frazier, OGLETREE DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee, for Appellee. **ON BRIEF:** Brian J. Field, Mark R. Paoletta, SCHAERR | JAFFE LLP, Washington, D.C., Melissa B. Carrasco, CARRASCO TRUMP, Knoxville, Tennessee, for Appellants. Keith D. Frazier, OGLETREE DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee, David L. Schenberg, OGLETREE DEAKINS, NASH, SMOAK & STEWART, P.C., St. Louis, Missouri, for Appellee.

---

**OPINION**

---

    JOHN K. BUSH, Circuit Judge. Jeffrey and Jessica Bilyeu objected on religious grounds to a coronavirus vaccine mandate imposed by their employer, UT-Battelle, during the pandemic.

According to the Bilyeus, when an employee raised a religious objection to COVID vaccination, UT-Battelle required the employee to submit to a lengthy panel interview with UT-Battelle's leadership regarding the employee's beliefs. Not only that, according to the Bilyeus, UT-Battelle officials prepared a "fact sheet" that the objecting employee had to read that included the views of various religious leaders in support of taking the vaccine. Only after completing this process could a religious objector forego the vaccine and then, only by being placed on indefinite unpaid leave.

This treatment and other conduct by UT-Battelle, the Bilyeus contend, violated Title VII of the Civil Rights Act of 1964 based on disparate treatment, failure to accommodate, and retaliation. The district court granted summary judgment to UT-Battelle. We **AFFIRM** the grant of summary judgment as to Mrs. Bilyeu because she lacks Article III standing. But we **VACATE** the grant of summary judgment on Mr. Bilyeu's disparate treatment and failure-to-accommodate claims and **REMAND** those claims so the district court may reconsider its decision in light of intervening Supreme Court precedent. Finally, we **REVERSE** the grant of summary judgment on Mr. Bilyeu's retaliation claim and **REMAND** it for further proceedings because Mr. Bilyeu has presented evidence that might persuade a reasonable jury to believe he suffered adverse action for seeking a religious accommodation.

## I. Factual Background

UT-Battelle manages the Oak Ridge National Laboratory in Tennessee. On August 26, 2021, UT-Battelle announced a policy requiring all employees to get a COVID vaccine by October 15 or face termination. It justified the mandate based on an executive order that we subsequently deemed unlawful. *See Kentucky v. Biden*, 23 F.4th 585, 589 (6th Cir. 2022).

The vaccine requirement posed a moral dilemma for Jeffrey and Jessica Bilyeu. They are a married Christian couple. Their religious faith holds that abortion is a grave sin—the murder of another human being. Because abortion is so wrongful, the Bilyeus consider it immoral to utilize aborted fetuses for medical research. They therefore object to COVID vaccines, which were developed using cells extracted from aborted fetuses. And they did not want to be

vaccinated because vaccination would make them complicit in the wrongful destruction and exploitation of human life.

UT-Battelle instructed employees seeking a religious accommodation to apply for one by September 15. It also directed that those granted any vaccine accommodation would need to wear masks, socially distance, and take COVID tests. A day after the application deadline, UT-Battelle announced that, starting on October 15, employees who requested a religious accommodation would have to go on unpaid leave or use vacation days until the end of the pandemic. This policy change did not apply to those seeking medical accommodations.

The Bilyeus submitted their religious accommodation requests six days after UT-Battelle announced its vaccine policy. They were among 144 employees in total who applied for such accommodation.

On October 12, the Bilyeus sued and sought a temporary restraining order against enforcement of the unpaid leave policy, which the district court granted. On October 26, the district court held a hearing on the Bilyeus' motion for a preliminary injunction. The court denied that motion three days later, and UT-Battelle's policy took effect on November 1.

Mrs. Bilyeu claims she heard for the first time during the preliminary injunction hearing that breastfeeding mothers like her could qualify for a medical accommodation. She immediately requested one, which UT-Battelle granted the next day—two days before the vaccine policy took effect. As a result, Mrs. Bilyeu neither missed work nor lost pay.

Mr. Bilyeu received no similar reprieve. Instead, Mr. Bilyeu was told he had to sit for a panel interview, during which UT-Battelle officials thoroughly examined him about his religious beliefs. UT-Battelle defended this meeting with Mr. Bilyeu as simply designed to assess the sincerity of his religious convictions. But the interrogation went much further than that, according to the Bilyeus. For example, it forced Mr. Bilyeu to explain why he took "a position that conflicts with that of [his] religious leader" on the COVID vaccines. Deposition of Rule 30(b)(6) Witness and Exhibits, R. 111-4, PageID 2041. He was also asked to explain why working for UT-Battelle, which allegedly "uses fetal cell lines in the course of performing its missions," did not "offend [his] religious convictions, yet taking this vaccine" did. Deposition of

Rule 30(b)(6) Witness and Exhibits, R. 111-4, PageID 2043. And the model questionnaire that UT-Battelle used during the interrogation suggested that rejecting the COVID vaccine while also going to the doctor made the employee a hypocrite. Mr. Bilyeu testified that UT-Battelle forced him to sign a "certification statement" that he had read and understood a "fact sheet" UT-Battelle had given him. The "fact sheet" contained information touting the use of cell lines from aborted fetuses in the development of vaccines and common over-the-counter medications.

The "fact sheet" also included a paragraph titled "Religious belief," stating that "[l]eaders from a variety of faith traditions favor COVID vaccinations on the grounds of care for one's neighbors, family, and self." Deposition of Rule 30(b)(6) Witness and Exhibits, R. 111-4, PageID 2038. In support, the document cited statements allegedly made by the National Catholic Bioethics Center: "No one accepting the vaccines had any meaningful role in the abortions that were exploited to create abortion-derived cell lines. This fact . . . prompted the Vatican and US Bishops to clarify that people may use available vaccines with a clear conscience." Deposition of Rule 30(b)(6) Witness and Exhibits, R. 111-4, PageID 2039.

According to Mr. Bilyeu, the "fact sheet" made assertions that directly conflict with his religious beliefs that (1) "God does not just condemn those who engage in heinous acts of evil but also those who approve and accept these immoral actions" and (2) taking the vaccine would "separate us eternally from our eternal reward of heaven." Bilyeu Req. for Religious Accommodation, R. 111-6, PageID 2160. Mr. Bilyeu signed the "certification statement" that he had read the "fact sheet," but it failed to dissuade him from his belief that taking a vaccine derived from aborted fetuses would be wrongful.

So, after the interview, Mr. Bilyeu followed the protocol for those who sought a religious exemption from the vaccine mandate. On November 1, he began using his one month's worth of accumulated vacation days. And after exhausting those days, he went on unpaid leave. There is no evidence that he missed his paycheck for any performance-related reason. Mr. Bilyeu was without pay three days, until December 3, when UT-Battelle ended the unpaid leave policy. And on December 6, UT-Battelle allowed him to return to work with pay. UT-Battelle's decision to end the vaccine mandate came just a week after the Eastern District of Kentucky enjoined the Biden Administration's government contractor vaccine mandate on November 30 of that year.

*See Kentucky v. Biden*, 571 F. Supp. 3d 715, 719 (E.D. Ky. 2021), *aff'd as modified*, 57 F.4th 545 (6th Cir. 2023).

The Bilyeus allege that the unpaid leave policy caused them to take various precautions to make sure they could continue providing for their family. These included taking out a loan against Mrs. Bilyeu's 401(k), selling one of the family's four cars, and selling their boat. The Bilyeus testified that they took these steps no earlier than November 1, the day that the vaccine mandate took effect. Notably, this means the Bilyeus took all the actions rearranging their finances after Mrs. Bilyeu had received her medical accommodation.

In January 2022, the Bilyeus filed an amended complaint. They alleged disparate treatment, failure to accommodate, and retaliation arising from UT-Battelle's vaccine mandate. Mrs. Bilyeu's retaliation claim also alleged that her supervisor gave her a poor performance review because she testified at the preliminary injunction hearing. Following discovery, the district court granted summary judgment to UT-Battelle on all claims, except Mrs. Bilyeu's retaliation claim. The parties then settled that claim. This timely appeal followed.

## II. Discussion

We review de novo the district court's grant of summary judgment. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). A defendant is entitled to summary judgment if he can show that, when viewing the facts in the light most favorable to the plaintiff and drawing all reasonable inferences in his favor, there is no genuine dispute of material fact, and the defendant is entitled to judgment as a matter of law. *See id.*; *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). A genuine issue for trial exists where there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Before we address the merits, we have an independent duty to review the court's subject matter jurisdiction, whether or not the parties raise it. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). We review de novo the district court's subject matter jurisdiction. *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016). We can affirm on any basis

supported by the record, regardless of the district court's reasoning. *See, e.g., Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002).

### A. Mrs. Bilyeu's Claims

We must first address whether Mrs. Bilyeu has Article III standing to bring her claims. A plaintiff lacks standing unless she can show (1) a concrete and particularized injury that (2) is fairly traceable to the defendant's conduct and (3) can be redressed by a favorable decision in the case. *E.g., Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016). At the summary judgment stage, the plaintiff must point to facts in the record that, if true, would demonstrate her standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). Finally, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416.

Mrs. Bilyeu fails to meet this latter requirement. She offers two instances of alleged harm, but neither satisfies the requirement for an Article III harm under governing case law and given the facts of her case.

*First*, she claims that she "suffered the emotional toll of facing effective termination for [her] beliefs." But that is not a cognizable injury under our precedent. In *Savel v. MetroHealth System*, we held that a plaintiff could not assert Article III standing based on fears related to having to either disobey an employer-imposed vaccine mandate or violate the employee's religious beliefs. 96 F.4th 932, 939–40 (6th Cir. 2024). The *Savel* plaintiff lacked standing because he "claimed that he suffered mental and emotional anguish and anxiety and stress because he believed he would be forced to choose between his job and his religious beliefs" after his employer initially denied him religious exemptions to a COVID vaccination requirement. *Id.* at 939–40. That is precisely the injury Mrs. Bilyeu asserts. That is not an Article III harm according to *Savel*, which we are bound to follow.

*Second*, Mrs. Bilyeu argues that the threat of unpaid leave caused her and Mr. Bilyeu to take reasonable precautions because they had to "quickly provide for their family before the period of unpaid leave began." Appellant's Br. at 14. These included taking out a loan against Mrs. Bilyeu's 401(k) retirement plan, selling one of their four cars, and selling their boat. But

Mrs. Bilyeu testified that the family took these actions *after* she had received her medical accommodation. To be sure, Mr. Bilyeu's Article III standing may rely on harms from actions he took to raise cash because when they occurred, he still faced the real prospect of losing his paycheck for having objected to the vaccine on religious grounds. But Mrs. Bilyeu's risk of unpaid leave had been eliminated, given that she had received a medical exemption.

Mrs. Bilyeu therefore lacks Article III standing, so the district court did not err in granting summary judgment against her.

### B. Mr. Bilyeu's Disparate Treatment and Failure-to-Accommodate Claims

Mr. Bilyeu's claims are a different story. We address the merits of his claims under Title VII, which makes it unlawful, in pertinent part, for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1); *Savel*, 96 F.4th at 943–44.

Where, as here, the plaintiff relies on indirect evidence of discrimination, we analyze his claims under the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). Under the first step of that framework, a plaintiff must show "(1) that he was a member of a protected class, (2) that he experienced an adverse employment action, (3) that he was qualified for the position, and (4) that he was . . . treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515–16 (6th Cir. 2007). Our precedent has interpreted the "adverse employment action" prong to require a "material adverse action." That means the plaintiff must show "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The district court granted UT-Battelle summary judgment on the sole basis that Mr. Bilyeu did not suffer a materially adverse employment action. *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2024 WL 1905045, at *3 (E.D. Tenn. Mar. 22, 2024). The district court cited

No. 24-5418   *Bilyeu et al. v. UT-Battelle, LLC*   Page 8

*Tepper* for the proposition that unpaid leave does not qualify because Mr. Bilyeu "is simply not being paid for time that he has not worked." 505 F.3d at 515.[1]

But after the district court rendered its judgment, the Supreme Court overruled the materially adverse standard in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). There, a police department allegedly transferred a female detective because of her sex from a plainclothes position working on "high-visibility" cases with an unmarked take-home car to a uniformed-position (supervising patrol officer) that came with no car. *Id.* at 359. The transfer did not reduce the detective's pay or rank. *Id.* Nevertheless, the Court classified the transfer as an adverse employment action because the detective showed "some harm respecting an identifiable term or condition of employment." *Id.* at 354. The Court also prohibited lower courts from requiring a plaintiff to show "that the harm incurred was significant" or that it was "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. The Court thereby eliminated the "material" requirement that lower courts had added to the prerequisite of an adverse employment action. *Id.*

The Court's reasoning stems from the text of Title VII. When the statute makes it unlawful for an employer to "discriminate against" someone, that means to "treat worse." *Id.* Requiring plaintiffs to meet a heightened burden "is to add words" to the statute, the Court concluded. That is because the phrase "discriminate against" does not distinguish between discrimination that causes "significant disadvantages" and discrimination that causes "not-so-significant ones." *Id.*

*Muldrow* thus abrogates the "materially adverse" standard discussed in *Tepper* and relied on by the district court. So we must vacate the grant of summary judgment on Mr. Bilyeu's disparate treatment claim. We leave it for the district court to consider whether Mr. Bilyeu meets this standard in the first instance.

---

[1]*Tepper* made that statement in the context of a man who was put on unpaid leave for Saturdays because his religion precluded him from working that day. 505 F.3d at 511–13. Though we do not decide this appeal under *Tepper*, we doubt *Tepper* would condone involuntary, indefinite unpaid leave because that would give employers a way to functionally fire employees without triggering Title VII scrutiny.

No. 24-5418					*Bilyeu et al. v. UT-Battelle, LLC*					Page 9

*Muldrow* affects Mr. Bilyeu's failure-to-accommodate claim, too. Title VII "requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023). In other words, an employer fails to accommodate an employee under Title VII when it forces someone to abandon his religious beliefs to comply with "otherwise-neutral policies." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015).

Sixth Circuit precedent, however, forces plaintiffs to go one step further. A plaintiff in the Sixth Circuit must show that he: "(1) holds a sincere religious belief that conflicts with an employment requirement; (2) has informed the employer about the conflicts; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement." *Tepper*, 505 F.3d at 514 (citing *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). And under our case law, a plaintiff cannot satisfy prong three of this test without showing that he has suffered "some independent harm caused by a conflict between his employment obligation and his religion." *Reed v. UAW*, 569 F.3d 576, 581 (6th Cir. 2009).

The "independent harm" requirement clashes head-on with *Muldrow*. Saying that an employee needs to suffer a harm that is independent from having to violate his religious beliefs to comply with a policy at work is just another way of saying that the employee needs to face some harm beyond the discrimination itself. After all, the harm in a failure-to-accommodate case is the inability to comply with workplace policies while also complying with the tenets of the employee's faith. So just as *Muldrow* bars courts from forcing Title VII plaintiffs to show that they have suffered a "materially adverse impact," we hold that, under *Muldrow*, a court cannot dismiss a Title VII complaint simply because the plaintiff's only harm is having to choose between violating his religious beliefs and violating workplace policies. Just like for the disparate treatment claim, we vacate the district court's grant of summary judgment and remand for it to consider the matter anew.

### C. Mr. Bilyeu's Retaliation Claim

We analyze Mr. Bilyeu's retaliation claim under Title VII using yet another burden-shifting framework. In this context, the plaintiff must show that: "(1) he engaged in activity

protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). *Muldrow* expressly declined to disturb the "materially adverse" requirement for retaliation claims. *See* 601 U.S. at 357. So in the retaliation context, the plaintiff must show that he faced an adverse action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Mr. Bilyeu's primary argument is that filing an accommodation request is a protected activity and that his request caused UT-Battelle to put him on unpaid leave—a materially adverse employment action. We take as a given in this case that requesting a religious accommodation is a protected activity.**2**  And true, denying an accommodation request *can* be retaliatory. For example, imagine a boss denying an employee's accommodation request in retaliation for reporting the boss's sexual harassment of a coworker. But it does not follow that pairing the two, as Mr. Bilyeu has, *necessarily* creates a viable retaliation claim.

With this in mind, we see two problems with Mr. Bilyeu's reasoning.

*First*, allowing such a claim would mean all failure-to-accommodate claims also qualify as retaliation claims. This would violate the canon against superfluity, which prohibits us from interpreting a statute to render certain provisions meaningless or redundant. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314–15 (2009). Mr. Bilyeu's theory would eliminate Title VII's undue hardship requirement by allowing a plaintiff to functionally bring a failure-to-accommodate claim without the employer receiving the benefit of that defense.

*Second*, such an allegation does not follow the notion from *Burlington* that retaliation claims function primarily to prevent employer conduct that makes an employee less likely to

---

**2**Admittedly, the case law is not particularly clear on this issue. We have said in an unpublished opinion that requesting an accommodation, without more, is not a protected act, but the Third Circuit disagreed in a recent published opinion. *Compare Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020), *with Smith v. City of Atl. City*, 138 F.4th 759, 775 (3d Cir. 2025). That said, we need not clear up that confusion here because nobody has challenged whether Mr. Bilyeu engaged in a protected activity, and we cannot decide a case on a basis that nobody briefed. *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 379–80 (2020).

report discrimination. *See* 548 U.S. at 68. Presumably the employee files an accommodation request because he would be worse off without an accommodation. So the possibility that the request will be denied, standing alone, will not diminish a rational employee's willingness to ask for an accommodation—failing to do so would leave him in the same position as before.

For example, it would be odd to say in this context, without more evidence, that Mr. Bilyeu's accommodation request *caused* his unpaid leave or that unpaid leave constituted an adverse action against him. If Mr. Bilyeu had not filed the request, UT-Battelle presumably would have terminated him per the vaccine mandate. It would have been the vaccine mandate that caused whatever consequence Mr. Bilyeu received, and the accommodation request would have put Mr. Bilyeu in a marginally better position (unpaid leave) than if he had not made it (termination).

Accordingly, we agree with the district court that a plaintiff cannot bring a Title VII retaliation claim when he alleges only that he made an accommodation request and that the employer denied the request.

But Mr. Bilyeu does point to other evidence that could lead a reasonable jury to rule in his favor. *See Anderson*, 477 U.S. at 248. As noted, UT-Battelle subjected Mr. Bilyeu to an interview process purportedly designed to assess the sincerity of his religious beliefs. But according to Mr. Bilyeu, the meeting turned into a gauntlet of inappropriate questioning of his religious beliefs and attempted re-education as to his moral views.[3]

Recall that the Bilyeus had told UT-Battelle that taking the COVID vaccine conflicted with their religious beliefs because it was developed using cells descended from aborted fetuses. According to Mr. Bilyeu, however, his employer responded with skepticism about his religious views during his accommodations interview. At that meeting, UT-Battelle forced him to sign a "certification statement" that he had read and understood the "fact sheet" about the use of cell

---

[3]Remember that an employer can question whether the employee actually holds the asserted belief and whether it is in fact religious. *See Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378–79 (6th Cir. 1994). But once the employee establishes that the belief is in fact a sincerely held religious belief, the employer has no right to contest the accuracy of that belief, nor can it claim that it is not religious simply because the belief does not correspond with any specific religion. *See Truskey v. Vilsack*, No. 21-5821, 2022 WL 3572980, at *2 (6th Cir. Aug. 19, 2022).

lines from aborted fetuses. So he had to read the "fact sheet" whether he wanted to or not. And not only that, the "fact sheet" ended with a paragraph titled "Religious belief," where Mr. Bilyeu might argue at trial the listing of "facts" by his employer literally turned into the preaching of religious dogma. UT-Battelle, as noted, stated that "[l]eaders from a variety of faith traditions favor COVID vaccinations" and included a statement from the National Catholic Bioethics Center that "[n]o one accepting the vaccines had any meaningful role in the abortions that were exploited to create abortion-derived cell lines. This fact . . . prompted the Vatican and US Bishops to clarify that people may use available vaccines with a clear conscience." Deposition of Rule 30(b)(6) Witness and Exhibits, R. 111-4, PageID 2039. These statements are sufficient evidence for a reasonable jury to question whether UT-Battelle crossed the line from education into proselytizing to its employees as to whether vaccinations are sinful.

Again, Mr. Bilyeu contends that UT-Battelle's statements directly conflicted with his Christian religious belief that "God does not just condemn those who engage in heinous acts of evil but also those who approve and accept these immoral actions" and his belief that taking the vaccine would "separate us eternally from our eternal reward of heaven." Bilyeu Req. for Religious Accommodation, R. 111-6, PageID 2160.

A reasonable juror could conclude that that this type of interview process "could well dissuade a reasonable worker from making" a request for accommodations. *Burlington*, 548 U.S. at 68. That is because, for example, a reasonable juror could conclude that UT-Battelle designed the materials to convince employees that their religious views were incorrect or to shame those for views different from those held by the "Vatican and US Bishops" and "[l]eaders from a variety of faith traditions." Essentially, a reasonable juror could believe the fact sheet would make interviewees feel like bad Christians and attempt to coerce the employee into changing their religious beliefs. And that leads directly to the conclusion a reasonable juror could reach that UT-Battelle was forcing Mr. Bilyeu to give up his religious beliefs to comply with a workplace mandate. Forcing someone to sit through a harassing interview where they are told they are a "bad Christian" who should "see the light" and "change their ways" is a materially adverse employment action, and Mr. Bilyeu presented evidence essentially arguing that this is what took place. It is now up to a jury to decide whether it actually did. The district

No. 24-5418  *Bilyeu et al. v. UT-Battelle, LLC*  Page 13

court erred in granting summary judgment on that basis, so we reverse the grant of summary judgment and remand for a jury trial.

### III. Conclusion

The district court relied on now-abrogated precedent to decide Mr. Bilyeu's disparate treatment and failure to accommodate claims. So we **VACATE** the district court's judgment on those claims and **REMAND** for further proceedings consistent with this opinion. We **REVERSE** the judgment on Mr. Bilyeu's retaliation claim and **REMAND** for further proceedings because he has shown that a triable issue exists over whether UT-Battelle retaliated against him by subjecting him to an interview process that demeaned Mr. Bilyeu for his religious beliefs. We **AFFIRM** the judgment of the district court on Mrs. Bilyeu's claims.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5418

JEFFREY BILYEU; JESSICA BILYEU,

   Plaintiffs - Appellants,

v.

UT-BATTELLE, LLC,

   Defendant - Appellee.

FILED
Sep 29, 2025
KELLY L. STEPHENS, Clerk

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk